Statement.

98 580
103 770
98 580
104 575

# Staunton.

## CATT, TRUSTEE, AND OTHERS v. OLIVIER AND OTHERS.

### SEPTEMBER 27, 1900.

Absent, Harrison and Riely, JJ.

1. CORPORATIONS—*Assets—Notes Received on Condition—Creditors—Ignorance of Such Assets.*—The makers of notes, delivered to a corporation on conditions which have not been complied with, cannot be held liable to creditors of the corporation whose debts were not contracted on the faith of such notes, and who did not know of their existence until after their debts were contracted.

2. EVIDENCE—*Written Instruments—Delivery on Conditions—Parol Evidence—Case in Judgment.*—Parol evidence is admissible between the original parties to show that notes were delivered on conditions which have not been fulfilled. This does not vary or contradict the notes. In the case in judgment, the receiver of the insolvent corporation and its creditors stand on no higher ground than the original parties did.

3. CONTRACTS—*Delivery on Conditions—Subsequent Payments—Waiver.*—Payments on notes delivered on conditions before the conditions have been complied with will not be held to be a waiver of the conditions where the maker had the right to expect, and did expect, that the conditions would be complied with, and the money applied as he had stipulated it should be.

Appeal from a decree of the Hustings Court of the city of Staunton, pronounced February 17, 1899, in the chancery suit of *The William Knable & Co. Manufacturing Co. and Others* v. *The Wesleyan Female Institute and Others,* in which the appellees filed their petition praying the cancellation of certain nego-

tiable notes made by them, and an injunction to restrain the collection or disposition of said notes.

*Affirmed.*

The opinion states the case.

*A. C. Braxton,* for the appellants.

*Ranson & Ranson,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

The controversy in this appeal is whether W. L. Olivier and twenty-five other parties who filed their petition in this cause are liable to the creditors of the Wesleyan Female Institute, an insolvent corporation, on certain notes made by them and now in the hands of Reeves Catt, the receiver of the court in this case. This question was referred to one of the commissioners of the court for investigation. He reported the facts and circumstances under which the notes were made, and reached the conclusion that the makers of the notes were not liable thereon. The court confirmed his report, and from that decree this appeal was allowed.

It appears from the commissioner's report, which, in all material matters is, we think, sustained by the evidence, that in the year 1893 the friends of the Institute, finding that it was financially embarrassed, set about to devise means to meet its indebtedness, and to continue the school as a going concern; that the head of the movement was one W. W. Smith, an active worker in the Methodist Episcopal Church, South; that he and parties interested held a public meeting at the Young Men's Christian Association building in Staunton for the purpose of adopting some means to accomplish that end; that the plan proposed and adopted was that subscriptions to the amount of $25,000 should be secured, of which sum $10,000 was to be raised in and about Staunton by the friends of the institute, whilst the remaining sum of $15,000 was to be secured by the friends

of the school at large; that this fund was to be kept as a separate one, and, when secured, was to be used to pay off the bonded indebtedness of the school, after which any surplus that might remain was to be used for its general benefit; that it was further understood that none of the subscriptions secured were to be binding unless the entire sum of $25,000 was secured, and that this sum, when secured, was to be turned over to the institute for the purpose named, and none other; that when this was done, it was to give such subscribers a deed of trust on its real estate, by which it was to bind itself to return to them without interest the amount of their several subscriptions in the event it should cease to be conducted as a conference school in Staunton; that the next step taken was at a meeting of some of the subscribers to the fund held at the Virginia Hotel in Staunton, at which it was agreed that J. A. Fauver should act as trustee to hold the fund for the purpose named, and that he and one George S. Lightner should reduce to writing the conditions above stated, upon which subscriptions had been or were to be received; that this writing was never prepared; that there was no subscription paper, and that the promises to pay were embodied in the notes given by the subscribers, which were all executed after the last named meeting; that the subscription notes were obtained by different solicitors; just who those solicitors were is not shown, but many of them were taken by W. W. Robertson, president of the school, but not a member of the Board of Trustees of the corporation; that some time after the notes were made, "J. A. Fauver, treasurer," to whom they were all payable, made the following endorsement upon each of them: "J. A. Fauver, treasurer of the Board of Trustees of the Wesleyan Female Institute, Staunton, Va.," and left them with Mr. Robertson, at whose instance the endorsements were made, and in whose possession the notes seem to have been from the time they were executed until the corporation made an assignment of all its property to Reeves Catt, trustee.

It further appears that Robertson, president of the institution, Fauver, the payee in the notes, Catt, trustee, now receiver, and some, if not all, of the members of the Board of Trustees of the institute, knew the purposes for, and the conditions upon which, the notes were made.

· It further appears that none of the conditions upon which the notes were given were, or can be, performed by the institute.

One of the grounds upon which the creditors of the institute insist that the makers of the notes are liable thereon is that the notes formed a large and material part of the assets of the corporation, and were used by it with the full knowledge and consent of the makers of the notes as a basis of credit; and that as they (the creditors) relied largely upon the notes as a valid asset of the corporation in extending such credit, it would be inequitable and illegal not to hold the makers of the notes liable.

Whatever merit there might be in this contention, if true, it is unnecessary to consider, as the evidence does not show that the creditors, the appellants here, relied upon these notes in extending credit to the corporation, or even knew of their existence, until after their debts were created and the assignment made to Catt, trustee.

It is insisted that the notes being plain, unconditional and unambiguous promises to pay money, cannot be varied, altered or contradicted by any verbal evidence of a prior or contemporaneous agreement between the makers of the notes and the corporation.

No rule of law is better settled, or of greater importance, than that a written contract cannot be contradicted or varied by evidence of an oral agreement between the parties made before or at the time of such contract. The object of the evidence introduced in this case was not, however, for the purpose of contradicting or varying the writings in question, but to show that the conditions upon which they were to become operative never

occurred. That this may be done, within certain limitations, by oral evidence, is also well settled.

" In such cases," as was said by this court in *Nash* v. *Fugate*, 32 Gratt. 595, 609, " the oral evidence tends to prove independent facts, which, if established, avoids the effect of the written agreement by facts *de hors* the instrument, but do not tend to contradict or vary it." ✳ ✳ ✳ ✳

And in *Woodward, Baldwin & Co.* v. *Foster*, 18 Gratt. 200, 207, Judge Joynes, in discussing the same subject, says: " So it has been held that between the immediate parties evidence may be given of a contemporaneous agreement consistent with the written contract; as, for example, that the bill was endorsed and handed over for a particular purpose, as for collection, without giving the trustee the usual rights of an endorsee (*Manley* v. *Boycot*, 75 Eng. C. L. 45), or that the bill was transferred as an escrow, or upon an express condition which had not been applied with."

In *Ward* v. *Churn*, 18 Gratt. 801, 813, it was said that "when the instrument is delivered directly to the obligee, the delivery cannot be regarded as conditional in respect to the party who makes it, unless the condition is made known to the obligee. ✳ ✳ ✳ If the delivery is upon a condition made known to the obligee, his assent to it will be presumed from the acceptance of the instrument, and he will not be allowed to repudiate the condition thus asserted, and treat the delivery as absolute and unconditional." See, also, *Solenberger* v. *Gilbert*, 86 Va. 778; *Humphreys* v. *Richmond & M. R. R.*, 88 Va. 431.

The Supreme Court of the United States held in the case of *Burke* v. *Dulaney*, 153 U. S. 228, that in an action by the payee of a negotiable note against the maker, evidence was admissible to show by parol an agreement between the parties, made at the time of making the note, that it should not become operative as

a note until the maker could examine the property for which it was to be given and determine whether he would purchase it.

The controversy in this case is really between the same parties, for the receiver and the creditors in the case took no other or greater interest in the notes than the institute had. The evidence was not only admissible to show, but does show, we think, that the notes were made upon conditions which were never complied with; some of which, at least, if not all, were known to and recognized by the corporation.

It is also contended that the record does not show, except as to a very small number of the makers of the subscription notes, that they knew of or made their subscriptions upon the conditions named. Whilst only three of the subscribers to the fund for which the notes were given testify in the case, they prove clearly that the plan proposed and adopted for raising the money was upon conditions which have never been, and cannot be, complied with. The notes given, except in two instances, are of the same date, most of them payable at the same time, alike in all other respects, except as to amounts and makers; and they were kept together and treated by all parties as belonging to the same fund. The record, we think, satisfactorily shows that the notes were given for the purposes and upon conditions outlined when the plan for raising the money was proposed and adopted.

Neither were those conditions waived, as it is contended, by the subsequent conduct of the makers in making payment on their notes before the conditions were complied with. They had the right to expect that the conditions would be complied with, and that the money paid by them would not be used for any other purpose than that for which they agreed to pay it. That this was their expectation is shown by the fact that when Robertson, the president of the institute, used the money collected by him on the notes to pay the running expenses of the school, the attention of the Executive Committee of the Board of Trustees was called to it; when they, recognizing that the money

could not be used for any such purpose, directed that the note of the corporation, for the amount so used, be executed payable to Fauver, the same person to whom the notes were payable upon which collections had been made and misappropriated by Robertson. There is not sufficient evidence in the case to justify the court in holding that the makers of the notes had waived the conditions upon which their notes were made, after full knowledge that the conditions upon which they were made had not been, and could not be, complied with.

Without discussing further the objections urged to the decree complained of, we are of opinion that upon the whole case the makers of the notes, who are parties to this suit, are not liable thereon, and that the Hustings Court did not err in so decreeing, and directing their notes to be cancelled and surrendered to them.

*Affirmed.*