## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### WHITE V. HALL AND OTHERS.

#### March 14, 1912.

1. EVIDENCE—*Varying Written Contract—Reformation—Parol Evidence.*— Where land has been conveyed to a trustee "for the sole use and benefit" of another, the trustee will not be permitted to show by parol that he was a joint owner of the land, as that would vary or alter the terms of the deed, which is not permitted. Nor can he have the instrument reformed upon the tender of such evidence. Where there is no fraud or mistake in the preparation of an instrument, and it appears that the party signing understood its language and purport, it cannot be reformed on the faith of a contemporaneous oral promise which was not kept.

2. TRUSTEES—*Repairs—Improvements—Lien for Advances.*—A trustee has the right to make advances for the necessary repairs or improvements of the trust estate, unless prohibited, expressly or by necessary implication, by the terms of the instrument creating the trust, and for such advances he has a lien upon the trust subject, which he may enforce before being compelled to surrender it. Trustees invested with general powers of control and management are not bound to strict limitations. They are justified in making ordinary repairs and improvements, and are allowed to hold the estate until reimbursed; nor does the right of reimbursement depend upon the knowledge or consent of the *cestui que trust.*

3. DOWER—*Lien for Purchase Money—Advances by Trustee.*—The claim of a trustee holding the legal title to land for money advanced by him to pay the purchase price thereof is superior to the dower of the widow of the beneficial owner. The widow is only entitled to dower in the surplus after reimbursing the trustee the amount advanced by him to pay the purchase money, with interest thereon.

Appeal from a decree of the Circuit Court of Buckingham county. Decree for the complainant. One of the defendants appeals.

*Reversed.*

The opinion states the case.

*A. L. Holladay* and *A. B. Dickinson*, for the appellant.

*F. C. Moon*, for the appellee.

WHITTLE, J., delivered the opinion of the court.

In April, 1902, the appellee, W. E. Hall, filed a bill in equity in the Circuit Court of Buckingham county against the appellant, H. M. White, in which he asserted the sole beneficial ownership in 438 acres of land situated in that county, the legal title to which was held in the name of H. M. White, trustee for W. E. Hall; that the trustee had managed the land for the plaintiff for a number of years, and was indebted to him for moneys received from the sales of timber cut from the land and for crops grown thereon, and rents and profits derived therefrom. The bill prayed that White be required to deliver possession of the land to the plaintiff and to render an account as trustee.

Subsequently an amended bill was presented, containing other allegations and impleading additional defendants. Answers were filed to both bills, interlocutory decrees were entered, accounts ordered, and voluminous depositions taken.

The litigation culminated in the decree appealed from, which was pronounced by the circuit court at its November term, 1910. The essential features of that decree may be summarized as follows: (*a*) That by deed of August 12, 1892, James L. Anderson and wife conveyed the land in controversy to H. M. White, trustee for W. E. Hall, who thereby became the sole equitable owner in fee simple; and that White was not entitled to the land, or to any interest therein, by way of resulting trust or otherwise. (*b*) That the deed of September 27, 1897, from T. C. Leake, Jr. & Co. to H. M. White invested him with no individual estate in the land, and was only intended to operate as a release of the deed of October 24, 1894, from H. M. White, trustee for W. E. Hall, and W. E. Hall to T. C. Leake, Jr. & Co., which, though absolute on its face, was in fact a mortgage to secure a loan of $1,000 from the firm to H. M. White; and that H. M. White was not entitled to a lien on the land for any payments alleged to have been made by him on account of the purchase money. (*c*) That

H. M. White was not entitled to any allowance for permanent improvements put upon the land, or for taxes or insurance paid thereon by him, except to the extent to which he had already been compensated from the rents and profits. (*d*) That W. R. Silvey was not entitled, nor his administratrix, to any allowance for improvements put upon the land by him, but was chargeable with rents and profits since the land was turned over to him on May 31, 1903, down to and including the year 1908; also with the value of all timber, ties, etc., cut from the land and sold by him, to be applied as credits on his debt of $1,500 established by the decree. It was, therefore, decreed that Emily E. Hall, daughter and sole heir of W. E. Hall, who had died pending the litigation, was the equitable owner of the land, subject only to the widow's dower, and to the Silvey debt of $1,500, reduced by sundry items of credit, to which reference was made, to $1,096.98, with interest from January 1, 1908. (*e*) That by reason of the deed of September 27, 1897, from T. C. Leake, Jr. & Co. to H. M. White, and the conveyance, or mortgage, of January 1, 1898, from H. M. White and wife to Silvey, W. E. Hall had suffered loss to the extent of $1,500, with interest. Therefore, a personal decree was rendered in favor of W. E. Hall's administrator against H. M. White for the amount of the Silvey debt and interest. (*f*) Possession of the land was decreed to Emily E. Hall, the widow consenting to a commutation of her dower. (*g*) The land was decreed to be sold, and the proceeds charged with the commuted dower of the widow and the Silvey debt. (*h*) The sheriff was directed to withdraw $101.87, with interest (rents collected from the land and deposited in bank to the credit of the suit), and also to collect unpaid rents for the year 1910, and, after paying the unpaid costs of the suit, to pay the residue to the attorney for the plaintiffs. (*j*) And, finally, costs were decreed against H. M. White. From that decree White *alone* appealed.

We are of opinion, with respect to the initial matter in controversy—namely, the ownership of the land—that the letter of the deed from James L. Anderson and wife to H. M. White, trustee for W. E. Hall, must prevail, upon the settled general principle that parol evidence will not be received to vary or alter the terms of a written instrument. *Towner* v. *Lucas*, 13 Gratt.

(54 Va.) 705; *Catt* v. *Olivier*, 98 Va. 580, 36 S. E. 980. The deed, which was written by an attorney by the direction and in the presence of H. M. White and W. E. Hall, recites that in consideration of $2,200, of which sum $734 was paid in cash, and $1,466, the residue of the purchase money, was payable at one and two years, in equal instalments, bearing interest from June 1, 1892, secured by a contemporaneous trust deed upon the land, the grantors convey the same to H. M. White, trustee, "for the sole use and benefit of W. E. Hall," with absolute power of sale in the trustee and beneficiary acting jointly.

No grounds are suggested for the reformation of the deed, and the rule is that "where there is no fraud or mistake in the preparation of an instrument, and it appears that the party signing understood its language and purport, it cannot be reformed on the faith of a contemporaneous oral promise which was not kept." 34 Cyc. 922, and notes.

We are furthermore of opinion that the evidence establishes the following material facts: (1) That H. M. White and W. E. Hall, each of his own means, contributed one-half of the cash payment on the land. (2) That the deferred instalments of purchase money, aggregating $1,466, principal, with interest from June 1, 1892, were paid by H. M. White individually. (3) That at the date of the purchase of the land the organization of the White–Hall Company was in contemplation of the parties, and it was chartered in December, 1892; that the company, in addition to its preferred stock, issued twenty-five shares of common stock, of the par value of $100 per share; that W. E. Hall became vice-president and owned five shares of the common stock; that H. M. White was general manager and secretary and treasurer, and owned originally five shares of the common stock, but subsequently acquired a majority of the stock by purchase from other stockholders. The company was chiefly a lumber corporation, but also engaged in the mercantile and grocery business. It continued in operation until the year 1903, when it failed. (4) During the life of the company W. E. Hall drew largely upon it for supplies for the support of himself and family, and in that way ran up an account of over three thousand dollars. (5) At the date of the purchase the land in dispute was chiefly valuable for its timber; and shortly after

the incorporation of the White–Hall Company, with the knowledge and acquiescence of W. E. Hall, that company was permitted to take timber, ties, and bark from the land for its own purposes. The principal part of this cutting was done during the years 1893, 1894, and 1895. (6) On October 24, 1894, T. C. Leake, Jr. & Co. loaned for the use of the White–Hall Company $1,000, to secure which H. M. White, trustee, and W. E. Hall conveyed the land to that firm by deed of bargain and sale. H. M. White and W. E. Hall were equally responsible for this loan, but the whole amount was paid by H. M. White; and on September 27, 1897, the firm, by deed reciting a consideration of $50.00, conveyed the land to him. The true consideration, however, was the return of the $1,000 borrowed, with interest. (7) The White–Hall Company was indebted to W. R. Silvey in a large amount, and on October 8, 1901, H. M. White and wife conveyed the land to Silvey, the deed reciting a consideration of $1,000. (8) From the date of the purchase of the land from James L. Anderson, on August 12, 1892, until the commencement of this litigation, in 1902, W. E. Hall neither paid nor offered to pay any part of the deferred instalments of purchase money; nor did he assert any claim against White, either with respect to the land or the rents and profits, or for timber, ties, and bark cut therefrom by the White–Hall Company, or demand of White an accounting as trustee or otherwise. (9) The land cost James L. Anderson $1.00 per acre, and he sold it in 1892 for $5.00 per acre. As remarked, it was originally chiefly valuable for the timber. After the bulk of that had been cut, with the tacit consent of W. E. Hall, the land was lying out in an uncultivated condition, unfenced and unimproved, with the exception of two dilapidated and abandoned negro cabins, and was wholly unproductive for agricultural purposes. In these circumstances H. M. White took possession of the land, and, by intelligent management and industry, and the expenditure of large sums of money in labor and fertilizers, gradually, from year to year, transformed this wild land into a well-equipped, profitable farm. In addition to that, he expended $200 in fencing, and erected out-houses and dwelling houses at a cost of over $2,000. By these means this property, which was of trifling value, is now estimated to be worth over $6,000.

For years these transactions were conducted by H. M. White with full knowledge on the part of W. E. Hall, who made no remonstrance, offered no suggestion or assistance, either in money, labor, or otherwise, and asserted absolutely no claim to the farm for its issues until the institution of this suit in 1902. Then, for the first time, by advice of counsel, upon an initial expenditure of one-half of the cash payment ($367.00), he demanded the entire estate, in its improved condition, and an accounting by his trustee for rents and profits, and for the value of timber cut from the land.

We are of opinion that an account should be stated between H. M. White, trustee, and the estate of his *cestui que trust*, W. E. Hall, in which settlement the trustee should be allowed credits as follows: By one-half of the cash payment of the purchase money of the land, $367.00, with interest from August 12, 1892; by amount of the deferred instalments of the purchase money, $1,466, with interest from June 1, 1892; by amount expended for fencing, $200.00, with interest from January 9, 1899; by amount for permanent improvements, $2,029.02, with interest from June 1, 1898 (average date), and by one-half of the $1,000 loan paid T. C. Leake, Jr. & Co., $500.00, with interest from January 31, 1895.

On the other hand, the trustee should be charged with the following amounts: With receipts from the sale of lumber, ties, and bark, $325, with interest from June 1, 1898; with estimated rents and profits of the land, $1,200, with interest from average date of receipt, and with the W. R. Silvey debt, $1,500, with interest from January 1, 1898.

With respect to the allowance to the trustee of the amount expended in permanent improvements, the general doctrine is stated by Judge Freeman in a note to *Johnson* v. *Lemon*, 19 Am. St. Rep. 71, as follows: "In addition to what has already been incidentally said, it may be stated as a well-established doctrine, universally applied, that a trustee has a right to make advances or necessary repairs or improvements for the benefit of the trust estate, against which he has lien for reimbursement for such advances, or costs and expenses, which he may enforce before he can be compelled to surrender the estate, unless prohibited, either expressly or by necessary implication, from incurring such expenses by the terms

of the instrument creating the trust. * * * Trustees in-vested with general powers of control and management are not bound to strict limitations. They are justified in making ordinary repairs and improvements, and insuring the property, and are allowed to hold the estate until reimbursed; nor does the right of reimbursement depend upon the knowledge or consent of the *cestui que trust.* * * *"

So, in 2 Pom. Eq. Jur., sec. 1085, the learned author says it is the law, both in England and in this country, that a trustee will be allowed "all payments expressly authorized by the instru-ment of trust, all reasonable expenses in carrying out the directions of the trust, and, in the absence of any such directions, all expenses reasonably necessary for the security, protection, and preserva-tion of the trust property, or for the prevention of a failure of the trust. * * * Where a trustee properly advances money for any of the above mentioned objects, so that he is entitled to reim-bursement, he also has a lien as security for the claim, either upon the *corpus* of the trust property or upon the income," according as the advancement is for the benefit of the life tenant, or for both the life tenant and remainderman. Hill on Trustees, 647, and notes; 2 Perry on Trusts (6th ed.), sec. 913, and notes; 28 Am. & Eng. Ency. of Law (2d ed.), 1029, 1030, and notes; *Shirkey* v. *Kirby,* 110 Va. 455, 60 S. E. 40, 135 Am. St. Rep. 949.

The $101.87, referred to in paragraph (*h*) of the decree should be applied to the payment of costs.

The land must be sold to meet the liens and charges established thereon by this decision, including the commuted dower of the widow of W. E. Hall in the surplus of the purchase money after deducting the amount of payments made by H. M. White on the original purchase, with interest, which amounts constitute a paramount charge to the dower right of the widow in the land. If there should be a balance of purchase money after satisfying the enumerated demands upon the same, with costs of suit, such balance shall be decreed to Emily E. Hall.

Upon these considerations it follows that the decree of the circuit court must be reversed, and the case remanded for further proceedings to be had therein not in conflict with the views ex-pressed in this opinion. *Reversed.*