Syllabus.

## Staunton.

## WHITAKER & FOWLE V. LANE AND OTHERS.

### September 16, 1920.

1. SEALS AND SEALED INSTRUMENTS—*Delivery of Contract for Sale of Land on Condition—Parol Evidence to Show That Condition Had Not Been Complied With.*—A contract under seal for the sale of real estate can be delivered by the purchaser to his vendor on condition, and parol evidence may be received to show that the condition on which it was delivered had not been complied with.

2. STARE DECISIS—*Technical Rule Established by Precedent—When Precedent Will Not be Followed.*—While great consideration should be given to precedent, especially to one of long duration and general acceptance, it cannot be that a rule merely established by precedent is infallible. This would stay all progress and forbid all development. If the rule established by precedent is highly technical, and finds its origin in reasons which no longer exist, and the courts have from time to time found it necessary to make exceptions thereto to meet the needs and methods of doing business in modern times, it would seem that the courts should adapt their procedure to the age in which we live, and cease to follow a precedent for which they have always to apologize, and declare that it is highly technical and not justified either by reason or policy.

3. SEALS AND SEALED INSTRUMENTS—*Effect of Seal at Common Law.*—A common law seal was an actual seal, and needed no recognition in the body of the instrument. The seal was proved by simple inspection, and whether it were the seal of a particular party was a matter of proof, as any other fact would be. When the instrument was duly executed and the seal attached, it was not simply evidence of the obligation, but the obligation itself; and even though the instrument had been paid or performed according to its terms, it formerly still remained a binding obligation unless cancelled or destroyed, and could be again enforced against the maker. And for the same reason the destruction of the instrument necessarily involved the destruction of the obligation.

4. SEALS AND SEALED INSTRUMENTS—*Delivery—Necessity of De-*

*livery—Conditional Delivery.*—Whatever may have been the rule of the ancient common law, it is now conceded everywhere that it is as essential to the validity of a sealed instrument as to an unsealed instrument, that it shall be delivered. If delivery is essential to make the instrument operative in one case, it is eqally so in the other. Undoubtedly, there can be an absolute and unconditional delivery of a sealed instrument to the obligee therein, and upon the same principle that the power to pardon carries with it a power to annex conditions to the pardon, that is, the greater includes the less, and no good reason is perceived why the power to deliver does not carry with it the power to annex conditions to such delivery.

:5. SEALS AND SEALED INSTRUMENTS — *Delivery — Necessity of Delivery—Conditional Delivery.*—The common law rule that a sealed instrument, and especially a conveyance of land, cannot be delivered to the obligeé or grantee upon condition; that words of condition at the time of delivery are inconsistent with the act of delivery, and are as ineffective as if they had never been uttered, has been trenched upon in many respects, is not adapted to present-day methods, and no reason and no policy justifies the further adherence to the rule. The whole situation is amply cared for by the parol evidence rule, which applies as well to sealed as to unsealed instruments.

'6. SEALS AND SEALED INSTRUMENTS—*Delivery—Parol Evidence.*—Parol evidence is admissible to show that an instrument, either sealed or unsealed, was never delivered.

·7. PAROL EVIDENCE—*The Rule and its Limitations.*—In a controversy between the immediate parties to a written instrument, the parol evidence rule forbids the introduction of parol evidence to vary, alter, or contradict the terms of the instrument, or the legal effect of the terms used. But the rule does not forbid the use of parol evidence to show the circumstances of delivery of the instrument, as that an instrument executed and delivered for one purpose was being diverted and used for a different purpose, or that it was delivered on condition, as this does not vary the legal effect of the language. The rule applies both to simple contracts and instruments under seal.

·8. PAROL EVIDENCE—*Evidence to be Clear and Unequivocal.*—The application of the parol evidence rule to unsealed instruments has proved to be exceedingly satisfactory, and ample for the protection of the rights of all concerned. Its strict enforcement ought not to be relaxed, and when parol evidence is admissible in contravention of the *prima facie* right of another, it should be clear, unequivocal, and convincing.

·9. PAROL EVIDENCE—*Seals and Sealed Instruments.*—The reasoning upon which parol evidence will not be received to vary or alter

the terms of a valid written instrument applies with equal force, and like limitations, to sealed and unsealed instruments. There is now no more solemnity in making one than in making the other, and there is nothing in reason, policy, or expediency, that demands of the courts the further maintenance of a doctrine that is "highly technical and unsatisfactory," and wholly unnecessary for the protection of the rights of litigants.

10. PAROL EVIDENCE—*Prior Contract Only Partly Reduced to Writing.*—Suit was brought to enjoin the prosecution of an action at law upon a promissory note. The bill set forth that prior to the execution of the contract for the sale of the farm, in part payment for which the note was given, there was a complete oral contract between complainants and defendant for the sale of the farm and the enlargement of the capital of a bank and the part to be performed thereunder by defendant, valid in every respect except as to the required writing, and that the part only relating to the sale of the farm was reduced to writing, the part to be performed by defendant in regard to the capital of the bank being omitted at his instance.

*Held:* That parol evidence was admissible to show the prior oral contract alleged in the bill.

11. ISSUES TO THE JURY—*Sale of Land on Condition.*—Where in a chancery suit the evidence as to whether a contract for the sale of land was delivered absolutely or upon condition was conflicting, the issue should be tried by jury.

Appeal from a decree of the Circuit Court of the city of Williamsburg and county of James City. Decree for defendant. Complainants appeal.

*Reversed and remanded.*

The opinion states the case.

*Williams & Tunstall* and *T. J. Wool,* for the appellants.

*C. V. Meredith* and *Ashton Dovell,* for the appellees.

BURKS, J., delivered the opinion of the court.

On October 15, 1917, the appellants entered into a written contract with L. W. Lane, Jr., to purchase of him his

tract of land near the city of Williamsburg at the price of $42,500, of which $12,500 was to be paid five days after the date of the contract, and the residue in installments specified in the contract. This contract was complete on its face, and set forth in detail all the essentials of a written contract for the sale of real estate. Notes were executed by the appellants in accordance with the terms of the written contract, and an action was instituted on the note for $12,500 in January, 1918. Another action was also instituted against the appellants by the firm of Lane and Christian to recover for money furnished by them for supplies and labor used on the said tract of land. In February, 1918, the bill in the present suit was filed to enjoin the prosecution of the two actions at law aforesaid. The injunction was granted as prayed for, and at a subsequent date the defendants' demurrer to the bill was sustained and the bill dismissed. The correctness of that ruling is dependent upon the allegations of the bill.

The case made by the bill is as follows: The appellee, L. W. Lane, Jr., was president of the Peninsula Bank and Trust Company, hereinafter called the bank. Sometime in the year 1917 the bank desired to increase its capital stock from $100,000 to $500,000, and to change the location of its principal office from the city of Williamsburg to the city of Newport News, and retain a branch office at Williamsburg. The bank entered into an agreement with the appellants, under the style of the Peninsula Finance Corporation, of which they owned all the stock, to sell and dispose of the additional $400,000 of capital stock as soon as its charter had been amended; Lane undertaking to procure the necessary amendment. Acting upon the assumption that the amendment to the charter to the bank would be granted, tentative arrangements were considered with reference to the sale of the additional stock, and the removal of the principal office to Newport News, in accordance with

the tentative agreement which had been entered into between the bank and the appellants. During these negotiations it developed that in order for Lane to continue as president of the bank, it would be necessary for him to remove his residence to Newport News, where the principal office was to be located when the proposed amendment became effective, and he then stated to the appellants that his interest was so great in and near Williamsburg that he did not see how he could change his residence from Williamsburg to Newport News unless he could dispose of his farm near Williamsburg, and so important did the appellants consider it that Lane should continue as president of the bank that a conditional agreement was entered into between the appellants and Lane whereby the appellants were to purchase his farm at a fair and reasonable price and upon terms agreed upon, and Lane was to obtain the necessary amendment of the charter and subscribe to $25,000 of the additional stock of the corporation and make payments therefor as agreed on. Lane was to continue as president of the new bank, and also to assist in the sale of the additional stock without further compensation. This agreement was only to have force and effect when proper authority had been granted by the State Corporation Commission to increase the capital stock of the bank, and when the stock had been actually subscribed. Accordingly the agreement for the purchase of the farm of Lane by the appellants was reduced to writing and promissory notes were executed in accordance with the terms thereof, and Lane subscribed, through the appellants, to 800 shares of the increased capital stock of the said bank, and gave his promissory note for the sum of $4,000 to represent the first payment thereon. It was understood and agreed at the time the contract for the farm was executed and delivered and when Lane subscribed for the stock that they were parts and parcels of one single contract, and that the contract should only be

effective and binding when the amendment of the charter was granted and the stock subscribed for, and, should the said Corporation Commission refuse to grant the amendment, that the contract for the purchase of the farm and the subscription to the stock should be null and void, and that the same, together with the promissory notes given by the parties, were to be cancelled and returned with no obligation upon either party. It is also averred that the contract for the purchase of the farm was executed and delivered so as to set forth the terms upon which the 'farm was to be purchased in the event that the amendment to the charter was obtained, the plan for removal carried out, and Lane made his subscription as aforesaid.

It was further averred in the bill that all of the details of the mutual undertakings of the parties as hereinbefore set forth were fully agreed upon between the appellants and Lane, but that only that part which referred to the purchase of the farm had been reduced to writing, and that the residue had not been put in the contract for the sale of the farm, or in any other writing, upon the express request of Lane because he thought it might in some way affect deleteriously the sale of the stock; that the appellants had suggested and requested that the whole should be set up in one writing, but that the omission was made at the special instance and request of Lane for the reasons aforesaid.

The bill then avers that the Corporation Commission refused to grant the desired amendment to the charter, and that the appellants had returned to Lane his subscription to the increased stock and his note for $4,000, and had requested him to return the contract and notes given for the farm, which he had refused to do, and that he is now seeking to enforce the contract for the sale of the farm and the note given for the cash payment thereon, in contravention of the express agreement of the parties, and the bill asked that the contract for the sale of the farm should be rescinded

and declared void, or else that the contract should be so re-
formed as to set forth the true agreement entered into be-
tween the parties, and that in the meantime Lane be en-
joined and restrained from further prosecuting his action
on the note for $12,500. Lane demurred to and answered
the bill at length, denying in detail every material allega-
tion of the bill and the parties took full proof on the sub-
ject. The grounds of the demurrer were (1) That the bill
was multifarious, because it attempts in one suit to enjoin
two actions at law in which there were different plaintiffs;
(2) Because it attempts to vary and contradict by extrane-
ous testimony the terms of the note and of the contract
under which the note sued on was given.

[1] In the written opinion, made a part of the record,
the trial court sustained the demurrer and directed that the
bill be dismissed and the parties left to their remedy at law.
The decree appealed from, based on said written opinion,
states: "Upon consideration whereof, the court being of
opinion for reasons stated in writing and filed in the record
as a part thereof, that the injunction heretofore awarded
in this cause should not have been granted, and that the
complaint set forth in the bill of complaint is without merit,
and that the demurrer be sustained, and the bill dismissed
upon its merits, and the parties left to their remedy at law,
doth so adjudge, order and decree, and doth further adjudge
and decree that said injunction be and the same is hereby
dissolved." It appears from the written opinion aforesaid
that the trial court excluded all of the parol testimony of
the appellants, and for that reason not only sustained the
demurrer, but dismissed the bill on its merits.

The contract for the sale of the real estate was under
seal, the notes given for the deferred payments were not.
The complainants, Whitaker & Fowle, do not deny the exe-
cution and delivery of the contract and notes aforesaid, but
charge that it was agreed that the contract "should only be

effective and binding" when the bank was authorized to increase its capital stock to five hundred thousand dollars, and that "should the proper State authorities refuse to grant the amendment    *    *    *    the said contract should be null and void and the same, with the promissory notes given respectively, were to be cancelled and returned without any obligation upon either party." If the complainants are permitted to show a delivery of the contract on such condition, and that the condition has not been fulfilled, they will be relieved from liability under the contract without violating the parol evidence rule. The evidence of the alleged conditional delivery was excluded by the trial court. The question, therefore, with which we are confronted is, whether or not a contract for the sale of real estate can be delivered by the purchaser to his vendor on condition, and whether or not parol evidence may be received to show that the condition on which it was delivered has not been complied with.

[2] The courts have held, with singular unanimity, that a sealed instrument, and especially a conveyance of land, cannot be delivered to the obligee or grantee upon condition; that words of condition at the time of delivery are inconsistent with the act of delivery, and are as ineffective as if they had never been uttered. The cases considering the question are so numerous that it would be inexpedient, in a single opinion, to make any effort to review them. Many of the cases will be found cited in the notes, 16 Cyc. 644 and 130 Am. St. Rep. 929. Some of them are also reviewed by Staples, J., in *Miller* v. *Fletcher*, 27 Gratt. (68 Va.) 403, 21 Am. Rep. 356, and, after referring to the cases, he says: "A doctrine sustained by such an array of authorities, a doctrine which has survived all the changes and innovations of modern reform, must have something to commend it to the approbation of the courts beyond its mere antiquity. It is not to be overturned by denunciation. The

chief argument against it is that it recognizes distinctions technical and unsatisfactory in the extreme." This is undoubtedly true, and while great consideration should be given to precedent, especially to one of long duration and general acceptance, it cannot be that a rule merely established by precedent is infallible. This would stay all progress and forbid all development. If the rule established by precedent is highly technical, and finds its origin in reasons which no longer exist, and the courts have from time to time found it necessary to make exceptions thereto to meet the needs and methods of doing business in modern times, it would seem that the courts should adapt their procedure to the age in which we live, and cease to follow a precedent for which they have always to apologize, and declare that it is highly technical and not justified either by reason or policy.

[3] A common law seal was an actual seal and needed no recognition in the body of the instrument. The seal was proved by simple inspection, and whether it were the seal of a particular party was a matter of proof, as any other fact would be. When the instrument was duly executed and the seal attached, it was not simply evidence of the obligation but the obligation itself; and "even though the instrument had been paid or performed according to its terms, it formerly still remained a binding obligation unless cancelled or destroyed, and could be again enforced against the maker. And for the same reason the destruction of the instrument necessarily involved the destruction of the obligation." 1 Williston Contracts, sec. 507. It was this knowledge of the effect of a seal, as pointed out by Prof. Williston, that caused Shakespeare to put in the mouth of Shylock the words:

"Till thou can'st rail the seal off this bond
Thou but offend'st thy lungs to speak so loud."

And it was this knowledge that was the foundation of the oft quoted language of the Touchstone, that if I seal my deed and deliver it to the party himself upon condition, the deed is absolute and the condition is void, as the declaration of the condition is inconsistent with the act of delivery which gives effect to the instrument. Such undoubtedly was the effect of the seal at common law, but as pointed out by Wigmore, such is no longer its effect in England, the home of its origin. Speaking of the effect of the delivery of a sealed instrument to the grantee, he says: "A conditional delivery *in escrow to the grantee*, however, has come down to us traditionally, as a complete act, the condition being deemed vain. But this is an aribitrary distinction; no reason and no policy justifies it. In England the old rule, as handed down in Coke's Treatises, has, for more than two generations, been repudiated." 4 Wigmore's Evidence, sec. 2408. This statement of the text is supported by *Johnson* v. *Baker*, 4 B. & Ald. 440 (1826), where the delivery of a deed of covenant by a debtor to a creditor was made on condition of obtaining every creditor's signature, and it was held that the surety, who signed and delivered the deed on condition that all the other creditors should sign, was released because their signatures were not obtained; and by *Hudson* v. *Revett*, 5 Bingham, 368 (1829), where deeds were delivered by a debtor to the creditor's agent with a blank for the amount of a certain claim which was afterwards filled in according to the understanding by the creditor's agent. Best, Chief Justice, said: "This position about delivery as an escrow is merely a technical subtlety; * * * I decide it (the case) on this, that it either was no deed at all, until the sums were written in, and that then the jury were warranted in presuming a delivery to make it a deed; or, if it were a deed, it was delivered only to have operation from the time that those sums were written in which were to give it all its effect." *Bowker* v. *Burdekin*, 11 M. & W.

128, 146 (1843), was a case where a conveyance in fraud of creditors by one partner was delivered to the grantee to take effect upon execution by the other two partners. Parke, Baron, said: "I take it now to be settled, though the law was otherwise in ancient times, as appears by Sheppard's Touchstone, that in order to constitute the delivery of a writing as an escrow, it is not necessary it should be done by express words, but you are to look at all the facts attending the execution." In *Gudgen* v. *Besset,* 6 El. & B. 986 (1856), a lease was signed, sealed and delivered to the lessee, although after said delivery, the grantor retained said lease in his possession. The agreement was that it was not to take effect until the lessee paid one hundred pounds, fifty only having been paid. It was held that the clear inference was that the instrument should not operate as a lease until full payment, and if there was such an agreement, though no express words of delivery as an escrow were used, it would not operate as a deed until payment was made; Campbell, Chief Justice, holding that the formality of delivering the instrument to the third person as an escrow was not essential when it was intended to operate as such. Mr. Wigmore also cites *Xenus* v. *Wickham,* 2 H. L. C. 296 (1866), and *Watkins* v. *Nash,* L. R. 20 Eq. 262 (1875).

In *Miller* v. *Fletcher,* 27 Gratt. (68 Va.), at p. 408, 21 Am. Rep. 356, Judge Staples makes the following comment on *Hudson* v. *Revett, supra:* "The case of *Hudson* v. *Revett* was decided upon the ground that the deed was incomplete when it passed into the hands of the grantee, and the observations of the Chief Justice were wholly unnecessary to the decision." It will be observed, however, from the quotation hereinbefore made, that the Chief Justice did not rest his conclusion upon the incompleteness of the instrument. Judge Staples also makes the following comments on *Johnson* v. *Baker, supra:* "There is one other case decided by an Eng-

lish court sometimes relied on as opposing the doctrine of the text in Sheppard and other common law writers. I mean the case of *Johnson* v. *Baker*, 4 B. & Ald. 440, in which it was held it might be shown by parol testimony that a composition deed was delivered in escrow upon condition it should be void unless executed by certain other creditors, which was not done. It will be seen, however, that the instrument was a deed of composition whereby payments were to be made to all the creditors, each of whom was to release his claim, and if any should refuse the entire purpose of the deed was defeated. Nor does it appear that the creditor to whom the delivery was made was then a party to the deed, and he was not, therefore, in a condition to insist upon the estoppel." In *Bowker* v. *Burdekin, supra,* the deed was delivered to the party who was to take a benefit under it, and while the court held that it was an absolute delivery, the judges admitted *obiter* that it might have been delivered conditionally by the party, and if so it would not take effect until the condition was performed.

In addition to the authorities cited by Wigmore, there is a dictum in *London Freehold Co.* v. *Baron Suffield* (L. R. 1897), 2 Chy. at page 621, to the effect that a deed may be delivered to the grantee on condition. Based upon this case, Anson, in speaking of escrows, says: "There is an old rule that a deed thus conditionally delivered must not be delivered to one who is a party to it, else it takes effect at once, on the ground that a delivery in fact outweighs verbal conditions. But the modern cases appear to show that the intention of the parties prevails if they clearly meant the deed to be delivered conditionally. Anson Contracts (Am. Ed.) sec. 82.

As far back as 1601 an effort had been made to get away from the technical doctrine of the common law, and it was held in *Hawksland* v. *Catchel,* Cro. Eliz. 835, that there is not any difference where it is delivered to the party himself

as an escrow and where to a stranger;  *  *  *  When it is first delivered as an escrow, though to the party himself, it is clear that it is not his deed until it be performed;  *  *  *  for if upon delivery the word spoken by the obligor purported that it was not to be his deed, it is clear that it is not." Of this decision it is said in *Thoroughgood's Case,* 9 Co. Rep. 137, "to have been made *ex improviso."* Wigmore's comment is that "The authority and vogue of Coke's and Sheppard's writings obscured and suppressed prematurely this progressive conception." 4 Wigmore Ev., sec. 2405.

In *Blewitt* v. *Boorum,* 142 N. Y. 357, 37 N. E. 119, 40 Am. St. Rep. 600, Judge Peckham reviews some of the English cases hereinbefore recited and concludes his review with this statement: "As a result of the examination of the English authorities, I think it is clear that the presence of a seal on a writing was not the reason for prohibiting parol evidence of a condition attached to a delivery to a party, and where parol evidence was disallowed it was on the theory that otherwise it would be contradicting the writing. The rule was overthrown in England by the cases cited which permit parol evidence that the delivery of the writing, although under seal, may be shown to have been under an agreement that it was not to operate as such until the happening of some future event." Judge Peckham also says that the common law rule that a sealed instrument cannot be delivered to the obligee on condition has been repudiated in New York, except as to a conveyance of real estate. The latter is upheld simply on precedent, without passing on whether there is any sound basis for a distinction between cases relating to real estate and other kinds of written instruments.

In 14 Columbia Law Review, 389, there is an article by Mr. Herbert T. Tiffany, which he supports by abundant authority, in which it is said at page 391, "That the mere phys-

ical transfer of the instrument should in any jurisdiction be allowed to override the grantor's explicit declaration of intention that the instrument shall not be operative, is a striking illustration of the primitive formalities before referred to. An instrument may be handed to the grantee or obligee without effecting any delivery whatever, and it is difficult to say why it could not be so handed without effecting more than a conditional delivery. So far as the danger of misleading an innocent third person is concerned, the danger is as great when there is no delivery as when the delivery is conditional only. The view referred to has by a number of courts been repudiated in connection with bills and notes with the effect of upholding a conditional delivery thereof in spite of a manual transfer to the payee, and the same considerations in favor of its repudiation would seem to apply in the case of deeds of conveyance. A tendency to break in upon such a rule is indicated by decisions that it does not apply if the instrument shows on its face an intention that others than those who have executed it shall join in its execution before it becomes operative, as well as by decisions that the grantor can hand the instrument to the grantee to be in turn handed by the latter to a third person to hold in escrow without thereby rendering it immediately operative."

In Williston on Contracts, sec. 212, it is said: "It was the rule of the common law that though delivery be thus made to a third person as an escrow it cannot be so made to the grantee and the rule seems generally accepted that the delivery to the grantee necessarily makes the deed immediately effective, though there are occasional inconsistent decisions, and the distinction is somewhat fine between delivering in escrow to the obligee and entrusting the manual possession to him without the intention necessary to constitute a delivery."

We have thus far confined what we had to say to deeds,

and have said nothing about the delivery of unsealed instruments on condition. The right to deliver such unsealed instruments on condition seems to be freely allowed by the English courts. The leading case on the subject is *Pym* v. *Campbell*, 6 E. & B. 370, which corresponds very much to *Burke* v. *Dulaney*, 153 U. S. 228, 14 Sup. Ct. 816, 38 L. Ed. 698, and *Catt* v. *Oliver*, 98 Va. 580, 36 S. E. 980.

The cases in the Supreme Court of the United States bearing on the question under consideration are few and not entirely satisfactory. In *Pawling* v. *U. S.*, 4 Cranch 219, 2 L. Ed. 601, Marshall, Chief Justice, said: "The point in issue between the parties was the delivery of the instrument on which the suit was instituted. The plaintiffs below contending that it was delivered absolutely; the defendants that it was delivered as an escrow.

"The bond upon its face purports to be delivered absolutely; and it is not to be doubted that obligees would be much more secure against fraud, if the evidence that the writing was delivered as an escrow appeared upon its face, than by admitting parol testimony of that fact. But the law is settled otherwise and is not to be disturbed by this court.

"The subscribing witnesses to the bond were examined to prove its delivery. Henry Pawling executed it at one time; the other defendants, Kennedy, Todd and Adair, at a different time. With respect to Pawling, the testimony is as complete as can be required. William G. Bryant deposes that Pawling signed the bond, on condition that other persons, whom he named, should also sign it. The witness understood that if these other persons should not sign it, Pawling should be exonerated. Elijah Stapp, the other subscribing witness, deposes that 'he saw Pawling acknowledge it as his act and deed, upon condition that others, whom he mentioned, should also sign it.'

"They are the subscribing witnesses to the bond, and cer-

tainly a jury, believing them,. could not have avoided declaring, by their verdict, that the bond was delivered on condition. That condition' not having been performed, the bond, as to Pawling, remains an escrow." This would be entirely satisfactory, but in speaking of the liability of the other obligors, the Chief Justice says that one of 'the obligors "then sat down and inserted in the body of the bond the names of other persons who, he said, were also to execute the instrument which he then held in his hand." This was apparently done after Pawling had signed, but the opinion is not altogether clear on that point. It is said of this case in *Dair* v. *U. S.*, 16 Wall. at page 5, that "the additional securities to be procured in that case were named on the face of the bond, and this fact is stated in the plea." But in the official report of the case it is stated that the "defendants severed in their pleas," and in the opinion of the Chief Justice it is stated, that "Henry Pawling executed it at one time; the other defendants * * * at a different time," and it further appears from said opinion that the names of the other proposed obligors were inserted by Todd when he and the other sureties signed. The natural inference is that Pawling signed first and that the names of the other proposed obligors had not then been inserted in the bond. Moreover, in the case next hereinafter commented on, *Pawling* v. *U. S.* is cited for the proposition that a conditional delivery by an obligor to the obligee "might have been admissible."

In *Phila.*, *etc.*, *R. Co.* v. *Howard*, 13 How. 307, 334 (14 L. Ed. 157), an officer of a corporation was directed not to affix the seal of the corporation to an instrument until it was executed by Hiram Howard. In speaking of this matter, Curtis, J., speaking for the court, said: "If the offer had been to prove that, at the time the corporate seal was affixed, it was agreed that the instrument should not be the deed of the company unless and until the said Hiram How-

ard should execute it, the evidence might have been admissible." *Pawling* v. *U. S.*, 4 Cranch, 219; *Derby Canal Co.* v. *Wilmot*, 9 E. 360; *Bell* v. *Ingestre*, 12 Ad. & El. (N. S.) 317. But the understanding to which the question points was prior to the sealing and in no way connected with that act, of which the witness had no knowledge. It did not bear upon the question whether the instrument was the deed of the company, and was properly rejected."

In *Peugh* v. *Davis*, 96 U. S. 336, 24 L. Ed. 775, it was held that a deed of conveyance of real estate absolute on its face, may be shown by parol to be a mortgage to secure a debt. It was said that a court of equity will look beyond the terms of the instrument to the real transaction, and when that is shown to be one of security and not sale, it will give effect to the actual contract of the parties. As the guide upon which the court acts in such cases arises from the real character of the transaction, any evidence, written or oral, tending to show this is admissible. The rule which excludes parol evidence to contradict or vary a written instrument has reference to the language used by the parties. That cannot be qualified and varied from its natural import, but must speak for itself. *The rule does not forbid an enquiry into the object of the parties in executing and receiving the instrument.* Thus, it may be shown, that a deed was made to defraud creditors, or to give a preference, or to secure a lien, or *for any other object not apparent on its face. The object of the parties in such cases will be considered by the court of equity;* it constitutes a ground for the exercise of its jurisdiction which will always be asserted to prevent fraud or oppression and to promote justice." (Italics supplied.)

In *Ware* v. *Allen*, 128 U. S. 590, 9 Sup. Ct. 174, 32 L. Ed. 563, par. 2 of the syllabus, is as follows: "Parol evidence is admissible, in an action between the parties, to show that a written instrument, executed and delivered by the party

obligor to the party obligee, absolute on its face, was condi-
tional and was not intended to take effect until another
event should take place." If the words "obligor" and
"obligee" are construed in a technical sense, that is, as re-
ferring to parties to a sealed instrument, the language is
not warranted by the facts, as the instrument sued on was
not sealed. But the opinion is valuable as showing a dis-
tinction between varying the terms of a written instrument
by parol evidence, and showing by such evidence that the
instrument with all its terms intact, was not an operative
or binding instrument at all. Mr. Justice Miller, speak-
ing for the court, says: "We are of opinion that this
evidence shows that the contract upon which this suit
is brought never went into effect; that the condition
upon which it was to become operative never occurred,
and that it was not a question of contradicting or
varying a written instrument by parol testimony, but
that it is one of that class of cases well recognized
in the law by which an instrument, whether delivered
to a third person as an escrow, or to an obligee in
it, is made to depend as to its going into operation upon
events to occur or to be ascertained thereafter." The jus-
tice quotes approvingly from the Court of Queen's Bench,
in *Pym* v. *Campbell,* 6 El. & Bl. 370, 373, where the instru-
ment was also not sealed, the following language: "The dis-
tinction in point of law is that evidence to vary the terms
of an agreement in writing is not admissible, but evidence
to show that there is not an agreement at all is admissible."
Justice Miller draws no distinction between sealed and un-
sealed instruments, and I do not know that there was any
occasion to do so, but he cites and comments favorably upon
*Pawling* v. *U. S., supra,* where the instrument was sealed.

*Burke* v. *Dulaney,* 153 U. S. 228, 14 Sup. Ct. 816, 38 L.
Ed. 698, is the leading authority for the proposition that in
an action by the payee of a negotiable promissory note

against the maker, evidence is admissible to show a parol agreement between the parties, made at the time of the making of the note, that it should not become operative as a note until the happening of a future event. Here, of course, the instrument was not under seal.

We have not attempted any careful examination of the cases in other States. They are too numerous for review in a single opinion, but a casual observation discloses a disposition on the part of some of the courts to depart from the strictness of the common law rule in some of its aspects, without saying so. This is especially noticeable in the matter of delivery to the grantee as custodian, or depositary, which is, in substance, one of the claims of the appellants. Thus in *Rountree* v. *Smith,* 152 Ill. 493, 38 N. E. 680, several deeds *were delivered to the grantee* upon condition that they should take effect only upon certain securities being furnished the grantor, and with the further understanding that they were not to be recorded but to remain subject to the control of the grantor, she to continue to have control of the property and the right to sell and convey any part of it and receive the purchase money. It was held that the rights of the parties were precisely the same as though the grantor had never parted with the manual control of the deeds. In *Bunn* v. *Stuart,* 183 Mo. 375, 81 S. W. 1091, deeds were made, without consideration, to the grantor's grandchildren, and delivered to them upon the understanding that they should be returned to the grantor whenever he should call for them, and in no event should they be recorded unless he consented thereto. It was held that the deeds were never delivered so as to pass title. In *Lee* v. *Richmond,* 90 Iowa 695, 57 N. W. 613, a deed was executed and *delivered to the grantee* upon the condition that a criminal prosecution instituted by the grantee and his partner against the grantor's son should be stopped, and upon the further condition that if it was not satisfactory to the gran-

tee's partner, it should be returned to the grantor. It was held that as the criminal prosecution was not stopped or the settlement approved by the grantee's partner, there was never in law any delivery, and that the deed was without effect.

In *Haviland* v. *Haviland,* 130 Iowa, 611, 105 N. W. 354, 5 L. R. A. (N. S.) 281, a deed was made by an heir conveying his interest in the estate to his mother. The *deed was delivered to her* upon condition that it was not to be effective until it was executed by the other heirs, which was not done. The court held that as the deed was not executed by the other children it conveyed nothing, even though delivered. To the same effect, see *Kenney* v. *Parks,* 137 Cal. 527, 70 Pac. 556; *Oswald* v. *Caldwell,* 225 Ill. 224, 80 N. E. 131; *Farmer,, etc., Bank* v. *Haney,* 87 Iowa, 101, 54 N. W. 61; *Comer* v. *Baldwin,* 16 Minn. 172 (Gil. 151); *Gaylord* v. *Gaylord,* 150 N. C. 222, 63 S. E. 1028; *Clark* v. *Clark,* 56 Ore. 218, 107 Pac. 23; *In re Nicholls,* 190 Pa. 308, 42 Atl. 692; *Dwinell* v. *Bliss,* 58 Vt. 353, 5 Atl. 317; *Zoerb* v. *Paetz,* 137 Wis. 59, 117 N. W. 793.

It has been stated a number of times in opinions of this court that a deed cannot be delivered to an obligee in escrow; that the delivery in such case is absolute, and the deed takes effect presently, and the party is not bound to perform the condition. But the point has really been involved in only two cases. In all the cases in this State the foundation for the doctrine has been Coke upon Littleton and Sheppard's Touchstone, or previous cases decided on the authority of these common law writers. The doctrine was first announced in *Hicks* v. *Goode,* 12 Leigh (39 Va.) 479, 37 Am. Dec. 677. The instrument in that case was a bond for the payment of money which began, "We C. & J. promise to, etc." signed and sealed by "G" only, and delivered to one of the obligees on condition that it was not to be binding upon "G" unless and until it was signed, sealed and de-

livered by "J" also. In an action by the obligees against 'G," it was held that parol evidence was admissible to show the condition, and that the condition having been shown "G" was not bound. What is said in that case on the question under consideration was rested on the statements of Coke and Sheppard, and on the case of *Williams* v. *Green,* Cro. Eliz. 884, hereinbefore commented upon. The reason assigned in that case was, "That if it were allowed, 'a bare averment without any writing would make void every deed'." Judge Cabell said of that decision, "that the reasoning on which it is founded is not only very technical but it is unsatisfactory to my mind."

In *Ward* v. *Churn,* 18 Gratt. (59 Va.) 801, 98 Am. Dec. 749, the instrument began, "We A, B, C, D, and E, promise," was not signed by "C," but a seal with a blank space opposite was left for his signature. Here again the court stated the doctrine about delivering a deed to the obligee in escrow, and relied upon the Touchstone for authority. Judge Joynes, however, speaking of that doctrine, said: "A doctrine which thus overrides and disregards the intention of the parties is strict and technical to the last degree." In the course of his opinion he further said: "In *Hicks* v. *Goode,* 12 Leigh (39 Va.) 479, Judge Cabell made some comments on this doctrine and on the reasons assigned for it, and expressed the opinion that it rests on technical and unsatisfactory grounds. He did not controvert its existence, however, as a rule of law; nor is it necessary for me to do so in the present case. *I mean to express no opinion upon it."* (Italics supplied.) It will be observed that in both these cases the bond was not perfect on its face, and hence what was said was in a sense *obiter.*

In *Miller* v. *Fletcher,* 27 Gratt. (68 Va.) 403, 21 Am. Rep. 356, a bond, perfect on its face, was signed by three obligors, one of whom pleaded and offered to prove that he had signed and delivered the bond to the obligee on the express

condition that two other parties mentioned by him should sign and seal, and that if they should fail or refuse to execute and deliver it as their bond, he was not to be held bound for it. It was held that the plea was bad; that the bond was perfect on its face, and the defendant would not be allowed to plead a delivery by him to the obligee on condition. Here again the court relies on the statement in Sheppard, and on *Hicks* v. *Goode, supra,* and *Ward* v. *Churn, supra,* in neither of which was the question involved. The court then proceeds with the examination of a number of cases from other States. It cites *Simonton's Estate,* 4 Watts (Pa.) 180, where the court held that to permit the reception of such evidence would not only put it in the power of the grantee to practice a fraud upon the community by means of it, in obtaining credit that otherwise would not be given him, but would be opening a wide door for the introduction of frauds and perjuries. Of this case it may be said, in passing, that the same objection would apply to the instrument whether it was sealed or unsealed, and that the reason assigned is not sufficient as a basis for the distinction between the two classes of instruments. The court also relied on *Duncan* v. *Pope,* 47 Ga. 445, where it will be found, upon examination, that the court simply relies upon the bare statement of the rule, without giving any reason for it. The case of *Cincinnati W. & Z. R. Co.* v. *Iliff,* 13 Ohio St. 235, is also relied upon. But here also no reason is assigned except that the doctrine is "according to the uniform current of authority." *Ward* v. *Lewis,* 4 Pick. (Mass.) 518, is also relied upon, but the reasons there assigned for the application of the rule were, that to permit such parol evidence would "be not only a violation of the fundamental rules of evidence but productive of great injustice and mischief." Here again, no reason is assigned for the distinction between sealed and unsealed instruments. *Currie* v. *Donald,* 2 Wash. (2 Va.) 59, is likewise cited, but no reason is assigned in that case

.for the distinction between sealed and unsealed instruments, except that "If it had been intended as an escrow, it ought to have been so stated." The court also relies upon 2 Lomax's Digest 38, and 3 Wash. on Real Property, 268, but the quotations relied upon show that these authors simply announced the doctrine, but gave no reasons for it. At the conclusion of the cases above analyzed, there are also cited a number of authorities from other States without giving the facts or the reasons upon which they are based. We have not examined these cases for the reason hereinabove mentioned, that they are too numerous to review in a single opinion. No doubt the court selected for comment and review the cases most strongly sustaining the doctrine, and these we have commented upon.

The case of *Nash* v. *Fugate* came to this court twice,.and is reported in 24 Gratt. (65 Va.) 202 and 32 Gratt. (73 Va.) 595. .34 Am. Rep. 780, and when it was here` the second time the opinion states what was the holding on the first trial. In 32 Gratt. at page 601, 34 Am. Rep. 780, referring to the first decision, it is said: "This court held that where the surety entrusts the bond to the principal obligor and there is nothing on the face of the paper to indicate that others are also to sign as sureties, the obligee cannot be affected by any agreement or understanding between the principal obligor and the surety that others were also to sign before delivery unless it was made to appear that the obligee at the time he received the bond had notice of the condition upon which the surety had so signed.

"This decision was based merely upon the ground that as the surety gave confidence to the representations of the principal obligor, he must stand the hazard of their performance, and he cannot implicate the obligee in·any responsibility in the matter unless the latter is guilty of fraud or gross negligence in accepting the security."

It appears that no obligors were named in the bond.

There were simply more signatures than seals, and it was held that this did not constitute incompleteness, and that the bond was perfect on its face. On the first hearing it was held that such a bond could not be delivered by the obligors *to the obligee* on condition, and that the condition was void; but, when the case went back, the pleadings were changed, and it was averred that the surety executed the bond and delivered it, not to the obligee, but to the principal obligor, on the condition that it was not to be his bond when delivered to the obligee until executed by other persons; that it had been delivered by the principal obligor to the obligee without obtaining the signatures of the other sureties, but that the obligee had notice of the condition. It was held that if these facts could be proved they presented a good defense. The court distinguished the case from *Miller* v. *Fletcher, supra,* and held that while a bond complete on its face could not be delivered by the obligors to the obligee on condition, it might be delivered by one obligor to a co-obligor on a condition, and if the obligee had notice thereof, the obligor so delivering upon condition would not be bound unless the condition was fulfilled. The court again relies on Sheppard's Touchstone as authority for the position that a bond cannot be delivered to the obligee on condition. In the course of the opinion, however, it is said: "The rule which prohibits the admission of parol testimony to vary a deed or other writing is not infringed by the introduction of evidence relating to the delivery of the deed. Such evidence does not tend to contradict the deed or the recitals therein, but merely to show there has been no valid delivery." Again, "Indeed, it seems to be well settled that whatever relates to the point of execution, whether tending to show the time of delivery, or that the delivery is in the nature of an escrow, or to disprove it altogether, may be established by parol." And again, "But while parol evidence is properly admissible for the purpose

of establishing that the bond was executed on a condition which had not been performed, and that the obligee had notice of the fact, such evidence, where there is nothing on the face of the paper to put the obligee on his enquiry, ought to be very clear and satisfactory." Just why these statements do not apply as well to a sealed instrument as to an unsealed instrument, or to a delivery as well to the grantee as to a co-obligor, is not made to appear, except upon the authority of the oft quoted statements of Coke and Littleton.

In *Wendlinger* v. *Smith,* 75 Va. 309, 40 Am. Rep. 727, the instrument was sealed but was held to be incomplete on its face, and therefore parol evidence was admissible to show that the devisees who signed and delivered it did so on condition that they were not to be bound unless all the devisees executed it. This holding was based upon the authority of *Hicks* v. *Goode, supra, Ward* v. *Churn, supra,* and *Nash* v. *Fugate, supra.* After citing the cases last mentioned, the opinion continues: "These cases establish the proposition that the rule of law that a deed cannot be delivered to a party to whom it is made as an escrow to be the deed of the obligor only on condition, and that in such case the delivery is absolute and the condition nugatory, is applicable only to the case of deeds which are *upon their face complete contracts,* requiring nothing but delivery to make them perfect according to the intention of the parties; not to deeds which, *upon their face,* import *that something more is to be done besides delivery* to make them complete and perfect contracts according to the intention of the parties."

There are other cases in which the general statement is made that a bond, perfect on its face, cannot be delivered by the obligor, or by all of the obligors, to the obligee on condition, but it is not necessary to notice them, as in none of them except the case next hereinafter mentioned, was the question involved.

In *Blair* v. *Security Bank*, 103 Va. 762, 50 S. E. 262, the instrument was sealed and it was held that if perfect on its face, it could not be delivered in escrow to the obligee, and that parol evidence was not admissible to affect its validity. The statement is made solely on the authority of *Miller* v. *Fletcher, supra, Ward*·v. *Churn, supra*, and Bishop on Contracts, section 357. We have already pointed out the foundation on which *Miller* v. *Fletcher* rests, and that the question was not involved in *Ward* v. *Churn*. The passage relied on from Bishop is as follows: "The delivery of a deed to the grantee in person gives it immediate force, even though accompanied by an oral stipulation that it shall not take effect until a specified contingency has transpired. Such stipulation or condition is simply void. But it is otherwise of a written contract not under seal; a parol condition that its operation shall commence only on the transpiring of a future event will be good. If at the first impression this distinction seems technical, a minuter examination will show it to be otherwise. In the case of a specialty, there could be no incorporation into it of a parol condition postponing its effect without destroying its character as a sealed instrument, but oral and written simple contracts being equally parol ones, the degree of this instrument is not reduced by the oral condition." The reasons given by him that "In the case of a specialty there could be no incorporation into it of a parol condition postponing its effect without destroying its character as a sealed instrument" would seem to be inapplicable to a condition affecting the very existence and validity of the paper. The proposed condition does not simply postpone the effect of the paper, but denies its effect altogether because the condition has not been complied with.

It seems to be generally conceded that "where an instrument indicating on its face that others were to execute it besides those who did execute it, it may be shown by evi-

dence that the delivery, though made to the grantee or obligee, was conditional upon the execution of the instrument by other parties, and not absolute." *Ward* v. *Churn, supra,* and cases cited. This language was employed as applicable to sealed instruments, but aside from the doctrine laid down by Coke and Sheppard as to the ancient common law, can any reason be given why the same rule of restriction should not have been applied to unsealed instruments, or, to state the proposition conversely, if an unsealed instrument, perfect on its face, may be delivered on condition, why may not the same rule be applied to sealed instruments? In either case, it is a question of intention and notice. If an instrument concluding, "witness my hand and seal," has no scroll attached to it, it is not a sealed instrument, but if a scroll is attached opposite the signature it is sealed. The sole difference between the two is the attachment of the scroll. It is difficult to understand, at this day, when the courts are striving to enforce the substantial rights of parties, regardless of mere forms and technicalities, why one of these instruments may be delivered on a condition and the other not.

[4-6] Whatever may have been the rule of the ancient common law, it is now conceded everywhere that it is as essential to the validity of a sealed instrument as to an unsealed instrument, that it shall be delivered. In this respect, at least, the two stand on the same footing. If delivery is essential to make the instrument operative in one case, it is equally so in the other. Undoubtedly, there can be an absolute and unconditional delivery of a sealed instrument to the obligee therein, and upon the same principle that the power to pardon carries with it a power to annex conditions to the pardon, that is, the greater includes the less (*Lee* v. *Murphy*, 22 Gratt. [63 Va.] 789, 12 Am. Rep. 563), no good reason is perceived why the power to deliver does not carry with it the power to annex conditions

to such delivery. In the present advanced state of civilization, we think we should say of sealed contracts what the Court of Errors of Connecticut said of unsealed contracts: "Such a contract cannot become a binding obligation until it has been delivered. Its delivery may be absolute or conditional. If the latter, then it does not become a binding obligation until the condition upon which its delivery depends has been fulfilled. If the payee of a note has it in his possession, that fact would be *prima facie* evidence that it has been delivered; but it would be only *prima facie* evidence. The facts could be shown to be otherwise and by parol evidence. Such parol evidence does not contradict the note or seek to vary its terms. It merely goes to its point of non-delivery. The note in its terms is precisely what both the maker and the payee intended it to be. No one desires to vary its terms or to contradict them." *McFarland* v. *Sikes,* 54 Conn. 250, 251-2, 7 Atl. 408, 1 Am. St. Rep. 111.

The common law rule has been trenched upon in many respects, is not adapted to present day methods, and the whole situation is amply provided for by the parol evidence rule. We have already referred to decisions in this State permitting incomplete sealed instruments to be delivered on condition, and to decisions in several other States permitting delivery to the grantee as custodian or depositary, to the statement of Prof. Williston as to this *"nice distinction,"* and to the views of other recent distinguished law writers. We propose now to notice some of the departures in this State from the strictness of the common law, as well as the full protection afforded by the parol evidence rule. The quotation from the Touchstone says nothing about instruments complete on their face, so that the line of cases referring to incomplete instruments and the right to show by parol the delivery thereof on condition, is itself a departure from the common law rule. To this must be added

other departures.  Of course, it is admitted everywhere that it can be shown that there never was any delivery at all.  In addition, we have held that a deed absolute on its face may be shown by parol to be a mortgage, which is nothing more than a condition for the payment of money (*Holladay* v. *Willis,* 101 Va. 274, 43 S. E. 619; *Motley* v. *Carstairs,* 114 Va. 429, 76 S. E. 948) ; that parol evidence will be received to show that a consideration expressed in a conveyance of land as paid by one was in fact paid by another, the effect of which is to create a resulting trust in favor of the party paying the money (*Bank of U. S.* v. *Carrington,* 7 Leigh [34 Va.] 566; *Jesser* v. *Armentrout,* 100 Va. 666, 42 S. E. 681) ; that a deed absolute on its face may be shown to be subject to an expressed parol trust (*Young* v. *Holland,* 117 Va. 616, 84 S. E. 637) ; and that in suits for the specific performance of contracts for the sale of land it may. be shown that the plaintiff is not entitled to have performance.  This is placed on the ground that specific performance is not a matter of right, but of grace, and that the object of the evidence is to rebut an equity.  This last proposition, though not expressly decided, appears to be a *concessum* in *Towner* v. *Lucas,* 13 Gratt. (54 Va.) 713.

So that, so far as concerns the decisions in England, in the Supreme Court of the United States, and in Virginia— notwithstanding the great array of authority in the State courts in favor of the doctrine—there is little left upon which to uphold the common law rule except the statements of Coke and of Sheppard, that a sealed instrument cannot be delivered by the obligor to the obligee on condition, and the cases based thereon, and "no reason and no policy justifies" the further adherence to the rule.  The whole situation is amply cared for by the parol evidence rule which applies as well to sealed as to unsealed instruments.

[7] In a controversy between the immediate parties to

a written instrument, the parol evidence rule does not forbid the use of parol evidence to establish any fact that does not vary, alter or contradict the terms of the instrument, or the legal effect of the terms used. These are concluded by the writing, and the parties are estopped to deny them. Thus it is not permissible for a party who has signed and delivered a valid written instrument to show that there was an agreement that he was not to be bound at all, or that suit was never to be brought on it, or that it was to be paid cnly out of a particular fund, or that a blank endorsement was without recourse, or that it was to be paid at a different time from that stated, or that an endorser should be liable only as an assignor, or that a promise to pay money was to be discharged in some other manner, or any other similar defense. For such defenses vary the legal effect of the language used in the instrument. *Towner* v. *Lucas*, 13 Gratt. (54 Va.) 705; *Woodward* v. *Foster*, 18 Gratt. (59 Va.) 200; *Lynch* v. *O'Brien*, 115 Va. 350, 79 S. E. 389; *Metropolitan Life Ins. Co.* v. *Hall*, 104 Va. 575, 52 S. E. 345; *Citizens' Natl. Bank* v. *Walton*, 96 Va. 435, 31 S. E. 890; *Rector* v. *Hancock*, 127 Va., 101, 102 S. E. 663; *Brown* v. *Spofford*, 95 U. S. 474, 24 L. Ed. 508; *Martin* v. *Cole*, 104 U. S. 30, 26 L. Ed. 647. But the rule does not forbid the use of parol evidence to show the circumstances. of delivery of unsealed instruments, as that an instrument executed and delivered for one purpose was being diverted and used for a different purpose, or that it was delivered to the payee, promisee, or beneficiary on a condition that it was not to take effect except in a given event, or under given conditions. So also as between the immediate parties to negotiable paper, it may be shown who is principal and who is surety, or the agreement between endorsers as to the order of liability between themselves. None of these defenses vary the legal effect of the language of the instrument. *Solenberger* v. *Gilbert*, 86 Va. 778, 11 S. E. 789;

*Catt* v. *Olivier,* 98 Va. 580, 36 S. E. 980; *Hawse* v. *First Nat. Bank,* 113 Va. 588, 75 S. E. 127; *Ware* v. *Allen,* 128 U. S. 590, 9 Sup. Ct. 174, 32 L. Ed. 563; *Burke* v. *Dulaney,* 153 U. S. 228, 14 Sup. Ct. 816, 38 L. Ed. 698; *Kelly* v. *Olivier,* 113 N. C. 442, 18 S. E. 698; Bigelow's Bills and Notes, pp. 96-7, 103 and cases cited. I have stated the last proposition as applicable to *unsealed* instruments because the cases cited arose on that class of instruments, and some of them mention that fact, but as pointed out in Greenleaf on Ev., sec. 276, "This rule 'was introduced in early times, when the most frequent mode of ascertaining a party to a contract was by his seal affixed to the instrument; and it has been continued in force, since the vast multiplication of written contracts, in consequence of the increased business and commerce of the world.' \* \* \* 'The rule of excluding oral testimony has heretofore been applied generally, if not universally, to simple contracts in writing, to the same extent and with the same exceptions as to specialties or contracts under seal.' "

[8, 9] In the preceding discussion we have had reference to suits or actions between the immediate parties to the instrument, and not to controversies with third persons. The application of the parol evidence rule to unsealed instruments has proved to be exceedingly satisfactory, and ample for the protection of the rights of all concerned. Its strict enforcement ought not to be relaxed, and when parol evidence is admissible in contravention of the *prima facie* right of another, it should be clear, unequivocal and convincing. *Nash* v. *Fugate, supra; Motley* v. *Carstairs, supra.* But we are unable to see any reason why the same rule should not be applied to sealed as to unsealed instruments. There was a time when illiteracy was so common in England that a man who could read was regarded as such a valuable asset to the community that he was given the benefit of clergy, and exempt from the punishment of death

except for treason. The method of evidencing legal liability was by seal, nay more, a bond for the payment of money was not merely the evidence of a debt, but was the debt itself. At that time the affixing of a seal was a very solemn and serious matter, and all the attending circumstances became fixed in the minds and memories of those who affixed it or were interested in it. It occurred very seldom, sometimes not more than once in the lifetime of the party affixing it. But all this has passed away. The average business man knows little, if anything, about the distinction between sealed and unsealed instruments, and frequently cannot tell a few hours after signing a paper whether it had a scroll by way of seal affixed to it or not. No solemnity is attached to the affixing of a mere scroll, and while there may exist good reasons for retaining a scroll to certain instruments in order to dispense with consideration, or to extend the period of limitation, yet as a mere matter of evidence we can perceive no good reason for the distinction. The reasoning upon which parol evidence will not be received to vary or alter the terms of a valid written instrument applies with equal force, and like limitations, to sealed and unsealed instruments. There is now no more solemnity in making one than in making the other, and we are unable to see anything in reason, policy, or expediency, that demands of the courts the further maintenance of a doctrine that is "highly technical and unsatisfactory," and wholly unnecessary for the protection of the rights of litigants.

[10] The appellants also insist that, prior to the execution of the contract for the sale of the farm, there was a complete oral contract between them and Lane for the sale of the farm and the enlargement of the capital of the bank and the part to be performed thereunder by Lane, valid in every respect except as to the required writing, and that the part only relating to the farm was reduced to writing. This stated a case for the admission of parol.

evidence, not forbidden by the parol evidence rule, and the evidence was admissible under the principle announced in *Brent* v. *Richards,* 2 Gratt. (43 Va.) 539, and *Beach* v. *Bellwood,* 104 Va. 170, 51 S. E. 184.

We are of opinion, therefore, that the circuit court erred in dismissing the complainants' bill.

[11] The case was fully developed by the evidence on both sides before the demurrer was passed upon, and the decree appealed from not only sustained the demurrer to the bill, but also dismissed the case "upon its merits." The court had excluded the parol evidence of the complainants tending to show the conditional delivery of the contract, and of course did not consider it in coming to the conclusion to dismiss the case on its merits. In speaking of this testimony, the trial court, in its written opinion, says, "the evidence sought to be introduced the court would say, in passing, is *absolute,* contradictory and conflicting, and if it were admissible the court would find much difficulty in reaching a conclusion." We fully concur in this statement. The case is rendered doubtful by the character of the evidence introduced, and is in such condition that this court cannot safely say what decree should be entered in it. The case made by the pleadings and evidence is one in which an issue should have been made to be tried by a jury, and we think it should be remanded to the trial court with directions to award a proper issue to be tried by a jury at its bar to determine whether or not it was agreed between the appellants and the appellee, L. W. Lane, Jr., that the contract of October 15, 1917, whereby appellants contracted to purchase of said Lane the farm mentioned in the bill, should be void or of no effect in the event that the proper State authorities should refuse to grant the amendment of the charter of the Peninsular Bank and Trust Company, set forth and referred to in said bill, and upon the trial of such issue the appellants shall be permitted to introduce

parol testimony and to use such of the depositions taken in this cause as to it shall seem proper. We do not mean, however, to hold the trial court down to the specific issue designated. It should be permitted to order such issue, and in such form as will determine whether or not it was agreed between the parties that the validity and binding effect of the contract for the purchase of the farm was dependent upon the increase of the capital stock of the Peninsular Bank and Trust Company, and the subscription to such increase by the said Lane, set forth in appellants' bill.

*Reversed and remanded.*