## 𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

### H. P. BURNETT, TRUSTEE, v. J. C. RHUDY.

#### September 20, 1923.

1. CLOUD ON TITLE—*Prayer for Relief—Decree—Case at Bar.*—In the instant case complainant alleged that his deed to defendant of certain land had been recorded, that the deed had been delivered in escrow and was only to become operative when defendant, as part of the purchase price of the land, paid a note of plaintiff in bank, and that its recordation was a fraud on the rights of complainant. The prayer of the bill was that the land be ordered sold and the proceeds subjected to the payment of the note in bank, and for "such other, further and special and general relief as may be adapted to the nature of the case or agreeable to equity and good conscience." The effect of the decree of the lower court was to cancel the deed and to remove it as a cloud on complainant's title.

   *Held:* That although possibly the bill ought to have specifically prayed for this relief, as there was no demurrer to the bill, and no point made on appeal as to the form and measure of relief granted, the prayer for general relief was sufficient to warrant the decree which was actually rendered.

2. DEEDS—*Conditional Delivery—Recordation Before Condition is Performed—Case at Bar.*—In the instant case defendant purchased land of complainant and paid part of the purchase money in cash and agreed as further consideration for the land to pay a note of complainant's amounting to $4,120. Defendant asked and obtained a deed from complainant on the understanding that the deed was not to be recorded until the note in bank had been paid unless such recordation was preliminary to or part of an arrangement by which defendant expected to secure the money to pay the note for $4,120. No part of the note was paid, and defendant, without the consent or knowledge of complainant, had the deed recorded.

   *Held:* That a decree, the effect of which was to cancel the deed and to remove it as a cloud on complainant's title, should be upheld.

3. DEEDS—*Conditional Delivery—Validity.*—A delivery by a grantor to a grantee of a deed on condition that it should not become effective until the grantee paid a note of the grantor's is lawful and binding upon the grantee.

4. VENDOR AND PURCHASER—*Vendor's Lien—Deed Delivered on Condition—Section 5183 of the Code of 1919.*—Where on a contract for the purchase of land a deed was delivered conditionally to the grantee, which condition was never complied with and no deferred installment of purchase money, to extend beyond the delivery of the deed, was ever contemplated between the parties, section 5183 of the Code of 1919, providing that a vendor's lien shall be expressly reserved on the face of the conveyance, has no application. The condition on which the deed was delivered never having been complied with, the deed never became operative, and this of course ends any question as to a lien for the money.

Appeal from a decree of the Circuit Court of Grayson county. Decree for complainant. Trustee in bankruptcy of defendant appeals.

*Affirmed.*

The opinion states the case.

*J. M. Parsons, H. A. Cox* and *H. P. Burnett,* for the appellant.

*J. S. Bourne* and *J. C. Padgett,* for the appellee.

KELLY, P., delivered the opinion of the court.

There is some conflict of testimony in this case, but the material facts, as evidently found by the circuit court to be clearly established by a preponderance of the evidence, and as we so find, may be fairly stated as follows:

Shortly prior to September 1, 1920, J. C. Rhudy agreed to sell to Wiley Baldwin a tract of land in Grayson county at the cash price of forty-five hundred dollars, of which $380.00 was paid to Rhudy in two installments of $50.00 and $330.00 some days later, and the residue, amounting to $4,120.00, was to be paid in cash by Baldwin to the Washington Banking and Trust Company, of Fries, Va., in discharge of a note for that

amount, due September 20, 1920, which Rhudy owed to that company. Both parties fully understood that the sale was to be, to all practical intents and purposes, a cash transaction.

For some years prior to the sale, Rhudy and Baldwin resided in Grayson county. They were well acquainted and Rhudy had full confidence in Baldwin's integrity. At the time of this sale, Rhudy had moved to and was residing in Maryland.

On September 1, 1920, Baldwin, who had already paid Rhudy $50.00, wrote the latter to this effect: "I hoped to send your money and was waiting to close a deal on my land but haven't yet. However I have an arrangement to get it by September 8th and will send it by that time and also will lift your note on the 20th. Think I will sell by that time. I am well pleased with my trade, think it worth the money."

Again, on September 8, 1920, Baldwin wrote Rhudy as follows: "Here I am again. I am enclosing a check to cover balance of your part on land which is $330.00. I will meet balance, $4,120.00, when due. I think I will sell in a few days. * * * J. C., draw up a good *warnteed* deed, naming amount paid and also amount I am to pay the bank, $4,120.00, and send as early as you can, so I can have it recorded. I may have to do this in order to get the rest of the money."

On or about September 14, 1920, Rhudy mailed to Baldwin a deed dated as of that day, signed by Rhudy and wife, conveying the land to Baldwin with general warranty, and reciting the consideration in these words: "Forty-five Hundred Dollars, Three Hundred and Eighty cash in hand, and the party of the second part is to pay Washington Banking and Trust Company, Fries, Va., Forty-one Hundred and Twenty, due September 20, 1920."

The signature of this deed was witnessed, but there was no certificate of acknowledgment thereto. Baldwin sent the deed back to Rhudy with the request that it be acknowledged before a notary public and returned to him. This request was complied with. Rhudy is very emphatic in his testimony that he understood that the deed would only be treated by Baldwin as a delivered instrument in case he paid the note, and it seems to us clear that this understanding was mutual.

Baldwin failed to pay the $4,120.00, or any part thereof, to the Banking and Trust Company, but on November 1, 1920, without the consent or knowledge of Rhudy, had the deed recorded. It does not appear that this recordation was preliminary to or any part of an arrangement by which Baldwin expected to secure the money to pay the $4,120.00 to the bank. It does appear, however, that Baldwin could not have understood that he was, in any event, entitled to a conveyance of the land upon a credit to him of the last named sum or any part thereof. So true is this, that although he had been given possession of the land in September, 1920, he moved off of it about January 1, 1921, and told Rhudy's father and others that he would have to give up the place because he had failed to arrange for payment of the note in bank.

Some time after the first of January, 1921, perhaps in March of that year, Baldwin mysteriously disappeared, and in April, 1921, Rhudy instituted this suit in equity against Baldwin, alleging, among other things, that he had only recently discovered that his deed to Baldwin had been recorded, that the deed had been delivered in escrow and was only to become operative when the note in bank was paid, that its recordation was a fraud on the rights of Rhudy, and that Baldwin held the land "in effect as trustee for the payment of

said forty-one hundred and twenty dollar note." The prayer of the bill was that the land be ordered sold and the proceeds subjected to the payment of the note in bank, and for "such other, further and special and general relief as may be adapted to the nature of the case or agreeable to equity and good conscience."

Subsequently, and before any decree had been entered in the above recited suit, Baldwin reappeared in the community, and shortly thereafter, in July, 1921, upon a petition in bankruptcy filed by him, was adjudged a bankrupt. In the bankruptcy proceedings, the trustee therein appointed for Baldwin was directed by the referee to enter his appearance in this suit of Rhudy against Baldwin, "and defend the same for the benefit of the creditors of said bankrupt." Thereupon the trustee, H. P. Burnett, filed his petition, the gist of which was that there was an unconditional delivery of the deed from Rhudy to Baldwin, that the deed reserved no lien to secure the payment of the note for $4,120.00 assumed by Baldwin, and that the trustee was entitled to sell the land for the benefit of Baldwin's creditors.

To this petition by the trustee, Rhudy filed a demurrer and answer, and depositions were then taken on behalf of the complainant and the trustee.

Upon a final hearing the circuit court decreed "that the deed from J. C. Rhudy and Mary E. Rhudy, his wife, to Wiley Baldwin of date of September 24, 1920, conveying a certain tract of land in Grayson county, Virginia, on the waters of Elk creek, containing ninety-one and one quarter acres more or less, being the land in the bill and proceedings mentioned, be, and the same is hereby rescinded, annulled, cancelled and declared as null and void and of no force or legal effect on the ground that said deed was procured from the said J. C.

Rhudy by the fraud of the said Wiley Baldwin, and the said J. C. Rhudy is directed to pay to H. P. Burnett, trustee in bankruptcy, for the said Wiley Baldwin, the $380.00 paid by said Baldwin on said land, with interest from the 24th day of September, 1920." From that decree this appeal was allowed.

Baldwin did not attempt to make any conveyance of or to encumber the land, and the question in the case is solely one between Rhudy and the trustee in bankruptcy.

[1] It will be observed that the relief granted is not that which was specifically prayed for, nor that which the allegations of the bill manifestly contemplated, but there was no demurrer to the bill, and the prayer for general relief was sufficient to warrant the decree which was actually rendered. Indeed, there seems to be no question made upon this appeal as to the form of the relief granted if the facts supported the action of the court.

[2, 3] There are two assignments of error, the first of which is that the evidence did not establish with requisite clearness the fraud recited in the decree. We think the evidence clearly shows that Baldwin made a fraudulent use of the deed, or at least a use which necessarily operated as a fraud upon the rights of Rhudy. Both parties understood that there were to be no deferred payments subsequent to the transfer of the title. That the sale was in all essential and substantial respects to be a cash transaction was clearly proved, and Baldwin knew that the deed was to be delivered to him on that condition, and was not to become effective until he could comply with the condition. Such a conditional delivery to Baldwin as the grantee was lawful and binding on him. *Whitaker* v.

*Lane,* 128 Va. 317, 104 S. E. 252, 11 A. L. R. 1157. In view of the thorough understanding between the parties as to the terms of the sale, Rhudy was fully warranted in assuming, when Baldwin asked for the deed in proper form for recordation and said he might have to record it "in order to get the rest of the money," that it would not be recorded unless and until the money had been paid, or an arrangement had been perfected for such payment, of which arrangement the recordation would be a part. If Baldwin had any other intention than this when he asked to have the deed put in recordable form, he misled and defrauded Rhudy; and, regardless of his intent at the time of making that request, what he actually did will result in a fraud unless the decree appealed from is affirmed. The effect of that decree is to cancel the deed and remove it as a cloud on Rhudy's title. Perhaps the bill ought to have specifically prayed for this relief, but, as already pointed out, there was no demurrer to the bill, and no point is made before us as to the form and measure of relief granted, if the complainant's material allegations of fact are supported by proof.

[4] The second and only remaining assignment of error takes the position that as no vendor's lien was reserved, pursuant to section 5183 of the Code, securing the payment of the note for $4,120.00, the decree appealed from is in conflict with that section, and, therefore, erroneous. From what has already been said in this opinion, however, no question of a vendor's lien on the land is involved. No deferred installment of purchase money, to extend beyond the delivery of a deed, was ever contemplated between the parties; and this fact undoubtedly accounts for the failure of the deed to reserve a lien. The condition on which the deed was delivered never having been complied with,

the deed never became operative, and this of course ends any question as to a lien for the money.

The decree of the circuit court does substantial justice, and is free from any error to the prejudice of the appellant.

*Affirmed.*