# Richmond.

## JOHN H. HOPKINS AND CHAS. T. HOPKINS, PARTNERS, TRADING AS PARKSLEY COAL AND SUPPLY COMPANY, V. RILEY U. LECATO.

### May 28, 1925.

1. SALES—*Breach of Contract by Seller—Contract Requiring Deposit by Buyer—Parol Evidence—Case at Bar.*—In the instant case, an action by a purchaser of potatoes against the vendors, the contract of sale provided for the payment of five dollars per barrel when delivered as specified, "which is the full price agreed upon," and the purchaser agreed to deposit at a bank one dollar per barrel which was "to remain on deposit to guarantee the acceptance of the above named potatoes," but upon performance of the contract, the deposit was to be returned to the purchaser. One of the defendants testified that they had not delivered the potatoes because the deposit had not been made at the time agreed upon, and defendants sought to prove by the testimony of the agent of plaintiff that the deposit was to be made as soon as the contract was executed.

    *Held:* That this testimony was inadmissible under the parol evidence rule.

2. SALES—*Executory Contract—Deposit to Guarantee Acceptance—Case at Bar.*—Where a contract for the sale of potatoes for future delivery, after providing for the price of the potatoes stipulated, that the purchaser should make a deposit with a bank to guarantee the acceptance of the potatoes, which deposit was to be returned to the purchaser upon the execution of the contract, the deposit is for the purpose of guaranteeing the acceptance of the potatoes and not to protect the seller from changes in the market, and if the deposit is put up before the date of delivery, it is sufficient.

3. CONTRACTS—*Presumption that Written Contract Contains all Terms—Parol Evidence.*—Where a writing appears to be a complete contract, embracing all the particulars necessary to make a perfect agreement and designed to express the whole arrangement between the parties, it is conclusively presumed to embrace the entire contract and all the terms and provisions of the agreement between the parties.

4. PAROL EVIDENCE—*Statement of Rule.*—Evidence of a contemporaneous parol agreement is not admissible to vary or contradict the terms of a valid written instrument, except in cases of fraud or mistake.

5. PAROL EVIDENCE—*Illustrations of Rule—Exceptions—Conditional Delivery.*—It is not permissible for a party who has signed and delivered a valid written instrument to show that there was an agreement that he was not to be bound at all, or that suit was never to be brought on it, or that it was to be paid only out of a particular fund, or that a blank endorsement was without recourse, or that it was to be paid at a different time from that stated, or that an endorser should be liable only as an assignor, or that a promise to pay money was to be discharged in some other manner, or any other similar defense. For such defenses vary the legal effect of the language used in the instrument. But the rule does not forbid the use of parol evidence to show the circumstances of delivery of unsealed instruments, as that an instrument executed and delivered for one purpose was being diverted and used for a different purpose, or that it was delivered to the payee, promisee, or beneficiary on a condition that it was not to take effect except in a given event, or under given conditions.

6. PAROL EVIDENCE—*Conditions—Obligation of One Party Unconditional.*—To show that a writing in the form of a contract was never a real contract, as that it was delivered to take effect only on the happening of a certain condition and that such condition has not happened, does not in any true sense contradict or vary the terms of a written contract, and parol evidence to such effect is admissible as showing that the writing never became operative as a contract. But care must be taken to distinguish between evidence that the contract itself was to take effect conditionally, and evidence that the obligation of one party, which is unconditional by the terms of the contract, was to arise only upon the happening of a certain contingency. In the latter case the contract itself is in force, and the attempt to show a parol condition violates the rule against varying the terms of a written instrument by parol.

7. SALES—*Breach of Contract by Seller—Measure of Damages—Case at Bar.*—The instant case was an action for a breach of contract for sale of potatoes by the seller. The contract price was five dollars per barrel for the potatoes, and delivery was to be made between the 1st and 20th of July. Under these circumstances, the lower court did not err in instructing the jury, in the event they found for the plaintiff, that the measure of damages was the difference between the contract price of five dollars per barrel and the average f. o. b. market price of potatoes of the same grade between July 1st and July 20th, at the place of delivery to the carrier.

Error to a judgment of the Circuit Court of Accomac county, in a proceeding by motion for a judgment for

damages.   Judgment for plaintiff.   Defendants assign error.

*Affirmed.*

This is a proceeding instituted by notice of motion for judgment in which Riley U. LeCato, the defendant in error, was plaintiff and John H. Hopkins, *et als.*, partners, were defendants.   The notice of motion made claim against the defendants for damages on account of an alleged breach of a contract of sale between the parties; the contract being alleged as one whereby the defendant had agreed to sell, and deliver during a certain period, 400 barrels of Irish potatoes at a certain price. The plaintiff further alleged that the defendant had failed to deliver the potatoes and that he therefore was entitled to damages in the sum of $2,100.00.

A trial was had before a jury and upon the evidence and instructions of the court the jury rendered a verdict in favor of the plaintiff for the amount claimed.

The evidence for the plaintiff established the fact that a written contract had been entered into between the parties on March 17, 1920.   It further tended to show that there had been a breach of this contract on the part of the defendant sellers, by reason of their failure to deliver the potatoes in accordance with the terms of the contract.   The evidence on the part of the defendant was very brief, consisting of testimony of one of the members of the defendant firm, to the effect that they had not delivered the potatoes because a deposit mentioned in the contract had not been made at the time agreed upon.   The defendants, John H. Hopkins and Charles T. Hopkins, were partners trading under the name of Parksley Coal and Supply Company, and the contract was made by them under that firm name.

The contract between the parties, signed by or for

them respectively, on March 17, 1920, is in the following language:

"I, Parksley Coal Company, hereby agree to sell to R. U. LeCato, of Painter, Virginia, 400 barrels Irish Cobbler potatoes, delivery beginning July 1st to July 20th, to be evenly distributed throughout that period of time, and I agree to pack said potatoes in a merchantable condition and grade them up to the standard U. S. grade No. 1, and to pack in flat hoop stave barrels U. S. standard size and use O. K. brand covers on all barrels and load them in cars on the New York, Philadelphia and Norfolk Railroad, 200 barrels to the car. I furthermore agree that these potatoes shall be free from rot, scab and sunburn and to fill the packages with a big, round top. In consideration for which the said R. U. LeCato does hereby agree to pay the above named grower the sum of ($5.00) five dollars per barrel, when delivered as specified above, which is the full price agreed upon, and the said R. U. LeCato also agrees to deposit with The Eastern Banking Company, Painter, Va., the sum of ($1.00) one dollar per barrel which is to remain on deposit to guarantee the acceptance of the above named potatoes by R. U. LeCato. Upon full execution of this contract by the above parties, the amount deposited in the above mentioned bank is to be returned to the said R. U. LeCato. We have set our signature this the 17th day of March in acknowledgment of the above agreement."

It appears from the testimony that LeCato, the plaintiff in the action, was engaged in the general business of handling produce in the counties of Accomac and Northampton and bought potatoes from various other parties in the 1920 season, and after making these contracts his custom was to endeavor to market the potatoes in various markets in the west. The defendant

partnership were styled in the contract as "grower," but
it may be inferred from the evidence that they were like-
wise buyers and sellers locally of potatoes and other
produce.   It was further established by the plaintiff
that on the 28th of June, 1920, in the afternoon, appar-
ently after banking hours, LeCato delivered to the
Eastern Shore Banking Company $400.00, which was
accepted by the bank and entered on the following
morning, June 29th, as a deposit of that amount to the
credit of R. U. LeCato and Parksley Coal and Supply
Company.

The foregoing facts are the material facts necessary
for the consideration of the assignments of error.

*Stewart K. Powell* and *J. Harry Rew*, for the plaintiff
in error.

*J. Brooks Mapp, S. James Turlington* and *B. D.
Ayres*, for the defendant in error.

CRUMP, P., after making the foregoing statement, de-
livered the following opinion of the court.

The trial court having entered judgment upon the
verdict, the defendants, the plaintiff in error here, ob-
tained a writ of error from the Supreme Court of Ap-
peals.   In their petition for the writ, they make three
assignments of error, which will be considered in the
order in which they are made.

[1] The first assignment is as follows: "The court
erred in refusing to permit the witness, W. J. Baker, to
testify as to what was said by him to the defendants at
or about the time of the execution of the contract con-
cerning the deposit of $1.00 per barrel for the potatoes
in question as mentioned in the contract."   W. J. Baker

was the agent of the plaintiff and the contract was signed by him for the plaintiff. He was called as a witness for the plaintiff, and on cross-examination it was sought to elicit from him that, on the date he met with the defendants and the contract was signed, he made the statement to the defendants "that the one dollar deposit was to be put up as soon as the contract went in," the witness adding that this was what he told Mr. Hopkins. The court refused to allow this question to be answered in the presence of the jury on the ground that to admit such testimony would be in disregard of the rule that a written contract cannot be varied by parol evidence.

The argument is made by learned counsel for the defendants that the admission of such testimony would not tend to contradict or vary any of the terms of the contract; that the parol evidence rule does not preclude the admission of extrinsic testimony for the purpose of aiding in the interpretation or construction of a written instrument where the language of the instrument is such that it does not clearly express the intention of the parties or the subject of the agreement. And it is insisted that the contract here is ambiguous on its face in that no time is stated in express language for the deposit to be made, and, therefore, testimony establishing a contemporaneous parol agreement that the deposit was to be made immediately upon and in connection with the execution or signing of the contract would merely be adding a term to it which would not change the legal purport or the meaning of the contract.

In order to pass upon this question it is essential in the first place to determine exactly what the contract is as expressed in the writing. The written agreement which the parties signed bears the impress of a formal document signed by the parties and upon its face purports to

contain, and should be taken as containing, all the terms and stipulations of the contract made between the parties; under such circumstances as a rule all prior negotiations and contemporaneous statements orally made become merged in the complete written instrument itself and the written contract evidences the entire agreement between the parties. This contract is a final and complete embodiment of the agreement of the parties, and the intention of the parties with reference to the subject matter of the contract between them is to be gathered altogether from the language of the formal writing, which they have chosen to express the finality of their contractual arrangement.

A close analysis of this contract shows that the defendants as sellers agreed to sell to LeCato, the plaintiff, 400 barrels of potatoes to be delivered during a period from July 1st to July 20th, and they agreed to pack and brand the potatoes in a definite manner mentioned in the contract and load them on cars on the New York, Philadelphia and Norfolk Railroad, 200 barrels to the car; that the potatoes should be of the high standard described in the contract. In the, writing it is then stated that in consideration of the agreement to sell the potatoes and the other stipulations made by the sellers, LeCato "does hereby agree to pay the above named grower the sum of ($5.00) five dollars per barrel when delivered as specified above, which is the full price agreed upon." This is certainly a full acceptance, on the part of LeCato, of the agreement to sell and deliver on the part of the sellers, for a definite fixed price to be paid at a definite time, *i. e.*, when the potatoes are delivered, and the price is declared to be the *full price agreed upon.* So far the writing contains an ordinary executory contract for the sale and future delivery of personal property resting clearly upon full considera-

tion, *i. e.*, a promise on the part of the seller to sell and a promise on the part of the buyer to pay for. While the buyer does not use the word "purchase," certainly the agreement to pay for the goods when delivered coupled with a statement of the price to be paid, which is stated to be the full price, is more than equivalent to a mere statement that he agrees to purchase the goods which the seller agrees to sell. The contract then proceeds, after a comma following upon the words *full price agreed upon*, "and the said R. U. LeCato also agrees to deposit with The Eastern Banking Company, Painter, Va., the sum of ($1.00) one dollar per barrel which is to remain on deposit to guarantee the acceptance of the above named potatoes by R. U. LeCato. Upon full execution of this contract by the above parties, the amount deposited in the above mentioned bank is to be returned to the said R. U. LeCato." This further agreement or stipulation by LeCato following upon the agreement to pay a specified full price for the potatoes upon delivery is stated to be in order to guarantee the acceptance of the potatoes by LeCato. This is made more absolute by the immediately succeeding term, that after a full execution of the contract the amount is to be returned to LeCato, as this reference to the execution, which necessarily means the delivery commencing the 1st of July, makes it perfectly manifest that what the parties had in mind and intended was that the $400.00 should be deposited before the execution of the contract, *i. e.*, the delivery of the potatoes, was to start. The contract itself fixes this date as the 1st of July. We can well understand that since the sellers were to go to the trouble of packing the potatoes in a certain manner and of delivering them at the railroad and loading them in cars, they should require a guarantee that before these acts were done a deposit should be put up to in-

sure to them the acceptance of the potatoes by the purchaser.

[2] We see no special difficulty of construction in connection with this contract. It is an ordinary executory contract between parties clearly resting upon a valid consideration, *i. e.*, a promise for a promise, and therefore of binding effect from the time of its being signed. The sellers of the property, before delivery, were to prepare the potatoes, which ordinarily could be sold in bags or in plain boxes or barrels, in a particular manner, and they simply required that the purchaser, before they commenced the delivery, should put up the $1.00 per barrel as a guarantee that if they went to this unusual trouble and expense there should be a guarantee on the part of the purchaser that he would accept the potatoes. If the guaranteeing deposit was put up before the 1st of July it was notification to the seller that he should proceed and pack the potatoes in the manner agreed upon and load them on the cars.

From the express language of the contract and its terms and stipulations we can find nothing which would authorize the court in allowing the parol evidence of an extrinsic agreement to the effect that the $400.00 should be put up at the time the executory contract was made.

It is argued on behalf of the plaintiff in error that the object of having any deposit made was to protect the seller from changes in the market that might occur between March 17th and the time when the period of delivery was to commence. This suggestion seems to us to be necessarily without force. It is very usual for buyers on one side and growers or handlers on the other side to make contracts for future delivery at a definite price, of fruits and vegetables, and provide against changes in the market. But there is nothing on the face of the contract here from which it can be inferred that these

parties had any such intention in mind. On the contrary the agreement determines the price definitely, which is to govern the sale and purchase agreed upon between the period from July 1st to July 20th at the fixed amount of $5.00 per barrel. If at the signing of the contract the $400.00 had been put up or even if the contract in terms required that it be done, it would not in any way have affected the relative situation of the parties towards each other because of any changes in market prices that might occur between March 17th and July 1st. The making of the deposit therefore could not affect the market price and so far as appears from the contract had no relation to the market price. What protection therefore would the seller have had if the deposit had been made on March 17th, which he did not also acquire from the deposit when made on June 28? He was in either event absolutely bound to deliver his potatoes and at the agreed price.

If the deposit had been made on March 17th at the time the contract was signed and the purchaser, after the period for delivery commenced, had refused to accept delivery the seller would have had a right to bring an action for damages by reason of the buyers breach of the contract. The same thing exactly would have followed if the deposit were to be put up on the 28th of June and the buyer refused to accept the potatoes. The situation in which the seller would find himself would suffer no change by reason of the time when the deposit was to be made. So far as the market price is concerned the manifest intention of the parties was to make a binding contract for a definite price at a certain time entirely independent of the market price. This was, in a sense, looking at it from an outside standpoint, speculative because the market price at the time fixed for delivery might be greater or less than the price agreed on

by the parties, but the parties had a perfect right to make such a contract.

On the whole it seems very plain that the contract was not in any way ambiguous and that it could only be made ambiguous by admitting it to be altered in the manner proposed in the additional stipulation offered to be proved by parol. It has been argued also that there was no contract between the parties, in fact, because if the buyer were allowed to defer putting up the deposit until just before July 1st it gave him the advantage of speculating upon the market, so that if the price of potatoes increased he could refuse to put up the deposit and so be relieved, while if during the month of June the price of potatoes increased far above the contract price he had the option to put up the deposit and so compel performance by the seller. We do not think this is a reasonable view of the effect of the contract. The parties should be taken as having intended to bind themselves by this bi-lateral contract. The stipulation in the contract as to the deposit to guarantee the acceptance of the potatoes was only a subsidiary term, and while it was in a sense a condition precedent before the seller acquired the right to demand delivery, a failure on his part to comply with this term of the contract would have been a breach of it for which an action would lie in favor of the sellers. In case of such an action the purchaser could not seek to excuse himself by setting up his own violation of one of the essential terms of the contract.

[3] The writing before us here appears to be a complete contract embracing all the particulars necessary to make a perfect agreement and designed to express the whole arrangement between the parties. It is therefore conclusively presumed to embrace the entire contract and all the terms and provisions of the agreement

between the parties.    The tender of testimony to show that the parties agreed orally that the deposit of $400.00 was to be made upon the signing or execution of the contract was rightly refused by the court.

[4] In Virginia the parol evidence rule has been clearly adopted and has been followed scrupulously save in the cases in which the law has recognized exceptions to that rule.    *Slaughter* v. *Smither*, 97 Va. 202, 33 S. E. 544, is the case regarded in Virginia somewhat as the foundation stone upon which the doctrine rests.    It was there held:  "The general principle that evidence of a contemporaneous parol agreement is not admissible to vary or contradict the terms of a valid written instrument, except in cases of fraud or mistake, is so familiar and well established that citation of authority in its support would seem to be superfluous.    It is a principle founded in wisdom, and cannot be too carefully guarded. Upon its enforcement the certainty and sanctity of written contracts depend."    The Virginia cases both since and preceding the case just mentioned are very numerous.    Reference, however, may be made to *Good* v. *Dyer*, 137 Va. 114, 119 S. E. 277; *Foltz* v. *Conrad Realty Co.*, 131 Va. 496, 109 S. E. 463; and two quite recent cases, *Continental Trust Company* v. *Witt*, 139 Va. 458, 124 S. E. 265; and *Williamsburg Power Company* v. *Williamsburg*, 139 Va. 787, 124 S. E. 215.

Various exceptions to the parol evidence rule have been recognized, such as the right to prove that a written document was delivered upon condition, as was the case in *Whitaker* v. *Lane*, 128 Va. 317, 104 S. E. 252, 11 A. L. R. 1157.    Also the cases in which it is evident that the contract on its face is incomplete so that it rests partly in writing and partly in parol; likewise cases in which it is essential to explain the use of unusual terms. The exceptions to the rule are quite numerous, but the

evidence offered in the instant case is not brought within the operation of any of these exceptions.

Our opinion therefore is that in its plain legal import the written instrument under examination provides that the buyer might and should make the deposit before delivery, and as the contract fixed the time for delivery on July 1st, the requirement as to the deposit was satisfied by the money being deposited before that date. That such was the construction put upon the contract by the parties themselves before any controversy arose is shown by the evidence, for the defendants do not appear to have made any definite enquiry to ascertain whether the deposit had been made until a day or two before July 1st, when they did make enquiry of the bank and learned that the money had been sent to the bank on June 28th. Both parties appear to have assumed that the requirement as to the deposit had relation altogether to the date agreed upon for delivery.

[5] Nor can the evidence rejected be brought within the purview of the recognized rule that parol evidence is admissible to establish a conditional delivery of the written instrument, or to show that the contract was to take effect only upon the happening of some contingency in the nature of a condition precedent to the validity or existence of any contract between the parties. The general rule in Virginia is stated in *Whitaker* v. *Lane*, 128 Va. 317, 104 S. E. 252, 11 A. L. R. 1157, as follows:

"In a controversy between the immediate parties to a written instrument, the parol evidence rule does not forbid the use of parol evidence to establish any fact that does not vary, alter or contradict the terms of the instrument or the legal effect of the terms used. These are concluded by the writing, and the parties are estopped to deny them. Thus it is not permissible for a party

who has signed and delivered a valid written instrument to show that there was an agreement that he was not to be bound at all, or that suit was never to be brought on it, or that it was to be paid only out of a particular fund, or that a blank endorsement was without recourse, or that it was to be paid at a different time from that stated, or that an endorser should be liable only as an assignor, or that a promise to pay money was to be discharged in some other manner, or any other similar defense.   For such defenses vary the legal effect of the language used in the instrument.   (Cases cited.) But the rule does not forbid the use of parol evidence to show the circumstances of delivery of unsealed instruments, as that an instrument executed and delivered for one purpose was being diverted and used for a different purpose, or that it was delivered to the payee, promisee, or beneficiary on a condition that it was not to take effect except in a given event, or under given conditions.''

[6] Confusion may easily arise from a failure to distinguish properly between stipulations having obligatory force in a bilateral contract signed and put into effect by the parties, and conditions precedent to any binding obligation upon either of the parties.  This is clearly pointed out by Mr. Elliott in his supplementary volume to his work on Contracts, entitled:  "1913-1923 Cumulative Supplement," on page 429, where he says:

"To show that a writing in the form of a contract was never a real contract, as that it was delivered to take effect only on the happening of a certain condition and that such condition has not happened, does not in any true sense contradict or vary the terms of a written contract, and parol evidence to such effect is admissible as showing that the writing never became operative as a contract.   But care must be taken to distinguish be-

tween evidence that the contract itself was to take effect conditionally, and evidence that the obligation of one party, which is unconditional by the terms of the contract, was to arise only upon the happening of a certain contingency. In the latter case the contract itself is in force, and the attempt to show a parol condition violates the rule against varying the terms of a written instrument by parol."

In a note Mr. Elliott refers to a large number of recent cases. The distinction to which attention is thus drawn is illustrated in Virginia by two recent cases— *Whitaker* v. *Lane, supra,* and *Continental Trust Co.* v. *Witt,* 139 Va. 458, 124 S. E. 265. In the former case it was held that it might be shown by parol that the writing was delivered upon a condition upon which its validity was made to depend, as no contract came into existence until and unless the condition was fulfilled. In the latter case evidence affecting the obligatory force of a note was excluded for the reason that the note had been unconditionally delivered and the obligation of the maker to pay had gone into effect and could not be limited or varied by parol.

In our opinion the court did not err in excluding the evidence in question and therefore the first assignment of error is not well taken.

The second assignment of error is as follows: "The court erred in instructing the jury as to the measure of damages."

The instruction complained of is in the following language:

[7] "The court instructs the jury that the measure of damages, in the event the jury find for the plaintiff, is the difference between the contract price of $5.00 per barrel and the average f. o. b. market price of potatoes of the same grade between July 1st and July 20, 1920,

inclusive, of both, in Accomac county, on the New York, Philadelphia and Norfolk Railroad."

The plaintiff, LeCato, testified that in buying these potatoes and other potatoes in the counties of the eastern shore of Virginia, he had purchased them for shipment to the west and had made various sales to parties in the west and had been compelled to buy other potatoes in July to take the place of the potatoes which the defendants should have delivered him in order to carry out contracts he had made with other parties. He was unable to give in detail information as to contracts he had with parties in the western market. He did, however, testify that he bought potatoes during July, certainly one car load on July 14th, for which he paid $11.00. He further testified as to the market price f. o. b. the railroad in Accomac county for each day beginning with July 1st and ending July 20, 1920. The lowest price on any of those days being $8.25 and the highest $11.50. We think the evidence fully justified the court in giving the instruction as to the measure of damages of which complaint is made. This instruction follows the general rule governing the measure of damages upon breach of a contract of sale, at the suit of the purchaser against the seller. *Richmond Leather Manufacturing Co.* v. *Fawcett*, 130 Va. 484, 107 S. E. 800; *Sun Company* v. *Burruss*, 139 Va. 279, 123 S. E. 347. We perceive no error on the part of the trial court in giving this instruction at the instance of the plaintiff.

By the third assignment of error the defendants, the plaintiffs in error here, contend that the court erred in overruling their motion to set aside the verdict and grant them a new trial upon the ground that the verdict was contrary to the law and the evidence. At the end of the evidence the court gave five instructions, the first instruction being the one as to the measure of dam-

ages above transcribed given at the instance of the
plaintiff. The other four were given at the request of
the defendants. In the latter instructions the jury were
told that the contract was to be taken most strongly
against the plaintiff, the evidence showing that it was
prepared by the plaintiff or under his direction; that
each party to the contract had the right to rely upon the
other party for the faithful performance of his under-
taking; that the burden of proof is upon the plaintiff to
establish every essential element of his case by a pre-
ponderance of the testimony, and that this includes the
proof of his damage on account of the alleged failure of
the defendants to carry out their part of the contract.
In the instruction given at the request of the defend-
ants, in addition to the three to which allusion has just
been made, the court told the jury, "that by a proper
construction of the contract introduced in evidence it
was incumbent upon the plaintiff to make, upon the exe-
cution of the contract or within a reasonable time there-
after, the deposit of $1.00 per barrel on the 400 bar-
rels of potatoes contracted for, with the Eastern Shore
Banking Company, Painter, Va., to remain there on
deposit to guarantee the acceptance by the plaintiff of
the said 400 barrels of potatoes; and if the jury believe
from the evidence that the plaintiff failed to make such
deposit either upon the execution of the contract or
within a reasonable time thereafter, then the defendants
were released from any obligation under said contract."
Manifestly the defendants could not object to this in-
struction as it was given at their request. It is equally
manifest that even if it had been given at the request of
the plaintiff, the defendants could not have complained
of it as error, for in our opinion it gave a wider scope to
the contract than was authorized by its language, and in
favor of the defendants. As appears above, if the plain-

tiff made the deposit before the 1st of July it was in compliance with the terms of the contract, requiring it to be so made as to guarantee acceptance of the potatoes, the delivery of which was not to commence until the 1st of July. As the evidence showed that the deposit was made on the 28th of June, the verdict of the jury is conclusive to the effect that it was their opinion that, in the language of the court's instruction, the depositing of money on that date was within a reasonable time under all the circumstances of the case after the execution of the contract, although over a hundred days had expired. We think that this conclusion is in accord with the real meaning and true construction of the contract, is fully authorized by the evidence, and is a fair and proper finding under the instructions actually given by the court.

We are of opinion therefore that there was no error on the part of the lower court in overruling the motion for a new trial and entering judgment upon the verdict.

For the reasons stated we are of opinion that there is no error in the record of this case, and the judgment of the trial court will accordingly be affirmed.

*Affirmed.*

McLEMORE, J., dissenting.

CHRISTIAN, J., dissenting:

I feel constrained to dissent from the majority opinion of the court.

The deposit of the four hundred dollars by LeCato is admittedly a condition precedent to the obligation of the contract and Hopkins was not bound until that deposit was made.

The statement made by Baker, agent of LeCato, to Hopkins at the time the contract was delivered, "that

the one dollar (per barrel) deposit was to be put up as soon as the contract went in" shows that the intent of the parties was that the *delivery of the contract was conditional* and the parol evidence rule is inapplicable thereto, hence the evidence was clearly admissible. 20 A. L. R., note page 424, *Whitaker* v. *Lane*, 128 Va. 317, 104 S. E. 252, 11 A. L. R. 1157, decided that parol evidence was admissible to show a deed and notes complete upon their face were delivered upon condition that the Corporation Commission would grant an amendment to the charter of the Peninsular Bank and is authority for the rule that evidence *dehors* the written contract can be introduced to show the delivery conditional.

The time of performance of the contract was definitely fixed in the contract, and the deposit of the four hundred dollars, when the contract went in, was consistent with the writing, and was neither inconsistent with nor contradictory of the same, therefore it might have been shown by parol. *Rector* v. *Hancock*, 127 Va. 101, 102 S. E. 663.

The trial court instructed the jury that the deposit had to be made at the time of the execution of the contract or within a reasonable time thereafter. There was no evidence before the jury *as to what was a reasonable time to enable LeCato to make the deposit* and the jury was permitted to determine that one hundred and three days after the signing and delivery of the contract, and three days before the delivery of the potatoes was to begin, *was a reasonable time* to enable LeCato to make the deposit.

The jury evidently misconstrued the instruction, in that the deposit did not give vitality to the contract obligation of Hopkins, but that it was a mere security which could be deposited at any time before delivery was to begin. Freedom of contract in law permits par-

ties to arbitrarily agree upon any act as a condition precedent to the obligation of either party, which must be strictly performed, and courts **nor** juries have any power *to consider the wisdom or consequences* of the condition, but must enforce the contract according to its terms.

It is true Hopkins could waive the condition precedent, but he did not do so, for when he found the deposit was not made until June 28, 1920, he refused to deliver the potatoes, and LeCato never brought his suit until two years thereafter.

Nor does the fact that Hopkins never inquired about the deposit until the day it was made estop him from standing upon his legal rights under his agreement, and denying all obligation under the contract.

I think the verdict should have been set aside and judgment entered for the defendants.